IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

---

| | |
|---|---|
| KAMILLE D. JONES ) <br> 10504 Cascade Run Court ) <br> Owings Mills, Maryland 21117 ) <br> ) <br> *Plaintiff,* ) <br> -v- ) <br> ) <br> BLAIR WELLNESS CENTER, LLC ) <br> 5806 York Road ) <br> Baltimore, Maryland 21212 ) <br> ) <br> SERVE: Matthew Blair, Resident Agent ) <br> 15 Deep Dale Drive ) <br> Lutherville, Maryland 21093 ) <br> ) <br> and ) <br> ) <br> MATTHEW EDWARD BLAIR ) <br> 15 Deep Dale Drive ) <br> Lutherville, Maryland 21093 ) <br> ) <br> *Defendants.* ) | Case No. __1:21-cv-02606__ <br><br><br> **DEMAND FOR** <br> **TRIAL BY JURY** |

---

## COMPLAINT FOR UNLAWFUL EMPLOYMENT PRACTICES

Plaintiff, Kamille D. Jones, by and through undersigned counsel, brings this civil action against Defendants, Blair Wellness Center, LLC, and Matthew Edward Blair, in his individual capacity and as owner of Blair Wellness Center, LLC, (collectively, the "Defendants") for discriminatory and other unlawful employment practices arising out of and in connection with Plaintiff's employment with the Defendants, alleging upon information, belief, or personal knowledge the following:

## I. PRELIMINARY STATEMENT

1. Pursuant to 42 U.S.C. § 2000e, *et seq.*, Plaintiff brings this action to challenge Defendants' adverse employment actions taken against Plaintiff in violation of her rights under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 1981, as well as under Maryland and local anti-discrimination and retaliation laws.

## II. JURISDICTION AND VENUE

2. The jurisdiction of this Court is invoked to secure protection for and redress the deprivation of rights secured to Plaintiff under Title VII of the Civil Rights Act of 1964, and the Civil Rights Act of 1991 which provide for injunctive, equitable, and other relief against discrimination and retaliation in employment on the basis of race, sex, religion, national origin, and color.

3. The jurisdiction of this Court is also invoked pursuant to 28 U.S.C. §§ 1331, 1343(3) and (4), 42 U.S.C. § 2000e-5(f)(3), and 42 U.S.C. § 1981, in that this is a civil action arising under federal statutes.

4. Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiff's related state law claims.

5. Venue is proper in this Court pursuant to 42 U.S.C. § 2000e-5(f)(3), in that the unlawful employment practices were committed in Maryland, and Maryland is where Defendants have their principal offices and maintain relevant employment records.

6. Plaintiff timely filed her charge of discrimination and retaliation with the Equal Employment Opportunity Commission (EEOC) on February 25, 2021, and on July 13, the

EEOC issued Plaintiff a Notice of Right to Sue. Plaintiff has fully complied with all prerequisites to jurisdiction in this Court under Title VII.

### III.  PARTIES

7. Plaintiff Kamille Jones is an African American (Black) female citizen of the United States, residing in Baltimore County, Maryland, and who at all times relevant hereto was employed by the Defendants' cannabis retail business.

8. Upon information and belief, Defendant Blair Wellness Center, LLC (SDAT ID # W16962393) (hereinafter "Blair Wellness" or "Blair Wellness Center") is a top-performing medical cannabis dispensary in Baltimore City, Maryland (MMCC License: D-18-00028), which formed in 2015 as a domestic limited liability company. Defendant Blair Wellness is an employer as defined by Title VII.

9. Defendant, Matthew Blair is, on information and belief, a citizen of the United States, residing at 15 Deep Dale Drive, Lutherville, Maryland 21093 and the owner of Blair Wellness Center, LLC.  Defendant Matthew Blair is an employer as defined by Title VII, and holds himself out publicly as being the owner of Blair Wellness Center, LLC.

### IV.  FACTUAL BACKGROUND

10. Defendants hired Plaintiff Jones in October 2019 as a "Patient Advisor"—a public-facing, customer service-focused role, known colloquially as a "budtender."

11. Plaintiff was soon promoted to Assistant Inventory Manager, where she was broadly tasked with designing and implementing procedures for bringing the dispensary's product intake, labeling, and storage systems into compliance with the applicable provisions of COMAR.

12. The Maryland Medical Cannabis Commission ("MMCC") oversees all aspects of Maryland's Medical cannabis program and oversees inventory control through the Marijuana Enforcement Tracking Regulation and Compliance ("Metrc") system. The MMCC, by way of the Metrc system, tracks Maryland cannabis from seed to sale, including the inventories of each dispensary through a product's ultimate sale to a patient. Every individual item of every dispensary transaction must be accounted for in Metrc at all times.

13. COMAR 10.62.28.02 governs standard operating procedures for licensed dispensaries, requiring each licensee to (1) establish a standard operating procedure for all aspects of the receipt, storage, packaging, labeling, handling, tracking and dispensing of products containing medical cannabis and medical cannabis waste; (2) create and enter timely and accurate data into a perpetual inventory control system that identifies and tracks the licensee's stock of medical cannabis from the time it is delivered or produced to the time it is delivered to another licensee, a licensed grower, or a qualifying patient or caregiver; and (3) train each registered dispensary agent in the standard operating procedure and retain attendance records. Furthermore, a copy of the standard operating procedure should be readily available on site.

14. Upon information and belief, immediately prior to Plaintiff's promotion, upper management was made aware of substantial discrepancies regarding dispensary inventory and Metrc.

15. Upon information and belief, despite the inventory discrepancies, no disciplinary or other adverse action was taken against the previous Assistant Inventory

Manager, a white male, who voluntarily left his position at Blair Wellness Center.

16.  In assuming her new position, Plaintiff inherited an inventory in complete disarray. At the behest and specific direction of Blair Wellness upper management, Plaintiff spent from early July through the end of October 2020 working as many as 60 hours per week, in a concerted, successful effort to: (1) audit and bring the dispensary's inventory into COMAR compliance; (2) to design and implement standard operating procedures for product intake and maintenance of proper vault organization; and (3) to train ownership and management on those processes.

17.  While Plaintiff received the required basic budtender training when she was initially hired, she was never given any additional training, instruction, or performance reviews once promoted to Assistant Inventory Manager. However, Plaintiff was able to design and implement processes that allowed for greater transparency, efficiency, and profitability in one of Maryland's highest grossing dispensaries.

18.  On or about October 29, 2020, Plaintiff complained to human resources about racial discrimination, upon discovering that she earned less in wages than her predecessor (white) and other white colleagues.

19.  Upon information and belief, in response to Plaintiff's complaint, Defendant simply lowered the white coworker's wages, without addressing the situation or Plaintiff's complaint directly.

20.  On or about October 31, 2020 Plaintiff discovered that a coworker with whom she and others had worked in proximity in the days prior had tested positive for COVID-

19, and immediately brought this concern to the attention of upper management and human resources.

21. Despite being alerted to the fact that an employee—whose job involved processing bulk cannabis flower into individual packages for retail—possibly contaminated an unspecified amount of cannabis product, and despite the high rate of transmissibility of COVID-19, Defendants failed to immediately alert any staff members that they had been potentially exposed to COVID-19.

22. Upon information and belief, Defendants never alerted patients to the risk of potential COVID-19 exposure from employees.

23. According to an email Defendant sent to the entire staff on November 1, 2020, upper management learned of the employee's positive COVID-19 test the day prior, however instead of informing the specific employees who were potentially exposed as quickly as feasible, Defendants sent a staff-wide email at 1:16 pm, well into the next shift, exposing the identity of the COVID-19 positive coworker, and simply "asking any employees who may have come in contact with [the COVID-19 employee] last week to go get a COVID-19 test before returning to work." Notably, by the time the email was sent, many of the potentially exposed employees had already been at work since that morning, while on-site management allowed them to carry on business as usual.

24. That same day, due to growing concerns about being exposed to COVID-19 and potentially exposing others, Plaintiff requested sick leave in order to get a COVID-19 test, however, her request was denied without any reason given.

25. Upon information and belief, at least half of Defendants' staff of roughly twenty-five (25) employees contracted COVID-19.

26. Defendant Blair then informed Plaintiff that her position as Inventory Manager had been necessarily eliminated due to COVID-19 economic downturns, and that she would be offered a "lateral" move, with a pay decrease, to a non-management position as a shift lead.

27. Plaintiff accepted the offer and inquired about the status of her benefits, at which point Defendant Blair replied via email that her employment offer was thereby rescinded because of her unacceptable attitude, and that she would instead be offered a severance package of $1000 if she agreed to release Defendants from any and all liability. Plaintiff was then instructed that she had less than 24 hours to accept the severance.

28. Hours after being advised of her termination, Plaintiff was then advised by human resources via text message that she was being discharged for violations of overtime policy.

29. On November 18, 2020 Plaintiff received an email from Defendant indicating that her severance package was revoked due to "misconduct found in the course of a routine audit," with no further information provided.

30. Plaintiff Jones, along with the dispensary's only other two Black managers, were then criminally charged with theft and theft scheme after Defendant Matthew Blair called Baltimore Police on November 19, 2020 and indicated that thousands of dollars in products had been stolen between July 9, 2020 and November 8, 2020.

31. COMAR 10.62.06 governs dispensary theft or diversion, and requires a retail cannabis licensee, upon the finding of evidence of theft or diversion, to report that finding to the MMCC and the Maryland State Police *within 1 business day.* Then within thirty business days, the licensee is required to complete an investigation, amend its standard operating procedures to prevent the same situation from occurring again, and to send a report of the investigation to the Commission.

32. Every single employee of Blair Wellness Center has received discounted and/or free promotional products, which is typical and expected in the cannabis industry—"industry discounts" are readily applied by any Maryland dispensary upon a showing a valid MMCC-issued dispensary agent badge.

33. Plaintiff was only able to purchase dispensary items at discounted rates if another employee conducted the transaction, and had no ability to complete transactions unilaterally. All of the transactions presented to the police as evidence of theft were witnessed by other employees, and several were witnessed by members of upper management.

34. Upon information and belief, Defendant then hired a third-party public relations agent to design a social media post, publicizing a narrative that three former employees had undertaken a major theft scheme—a message Defendant also sent via mass SMS to the entire mailing list of Blair Wellness clientele, and repeated once again by way of a staff-wide email message.

35. On March 12, 2021, Maryland Department of Labor, Unemployment Insurance Division determined that insufficient information had been presented to determine any

misconduct on Plaintiff Jones's part in connection with her employment. Defendant appealed on March 16, 2021, by again providing Plaintiff's case number and indicating her termination was for cause, and resulting in a roughly twelve thousand Dollar ($12,000.00) overpayment judgment being assessed against Plaintiff Jones.

36. Plaintiff appealed the overpayment judgment on May 27, 2021 (Appeal No. 2106914). Upon receiving notice of Plaintiff's appeal, on May 29, 2021 Defendant Matthew Blair emailed Plaintiff directly, threatening, among other things, "further civil litigation action against [Plaintiff] and [her] co-conspirators" should her appeal continue.

37. Upon information and belief, once Plaintiff's unemployment benefit dispute was remanded to the Lower Appeals Division for the issuance of a new Non-Monetary Determination, Defendant appealed again, now claiming that Plaintiff received the $1000 severance he explicitly rescinded.

### V.   CAUSES OF ACTION

**COUNT ONE**
**Race Discrimination in Violation of Title VII of the Civil Rights Act of 1964**
**(42 U.S.C. §§ 2000e *et seq*.)**

38. The allegations of Paragraphs 1 through 37 are incorporated by reference as if fully realleged herein.

39. Plaintiff is an African American (Black) woman and well-qualified for her position when Defendants discharged her.

40. Plaintiff was treated differently by the Defendants in the terms and conditions of her employment due to her race. For example, Plaintiff was told her pay was capped, while similarly situated white coworkers earned above Plaintiff's capped wages.

41. In addition, Defendants marginalized Plaintiff while treating similarly situated employees more favorably. Specifically, Defendants misrepresented Plaintiff's ordinary transactions as misconduct solely because of her race.

42. Upon information and belief, only Black managers have been criminally charged in connection with Defendants' ordinary dispensary operations, while similarly-situated employees outside of the protected class were neither terminated nor criminally charged for alleged misconduct.

43. Plaintiff suffered damages as a result of Defendants' unlawful discriminatory actions, including emotional distress, future lost wages and benefits, and the costs of bringing this action.

44. Defendants intentionally violated Plaintiff's rights under Title VII, with malice or reckless indifference, and as a result, are liable for punitive damages.

WHEREFORE, Plaintiff demands judgment against Defendant in excess of Seventy-Five Thousand Dollars ($75,000) in compensatory and punitive damages, with interest and costs.

## COUNT TWO
### Retaliation in Violation of Title VII of the Civil Rights Act of 1964
**(42 U.S.C. §§ 2000e *et al.*)**

45. The allegations of Paragraphs 1 through 44 are incorporated by reference as if fully realleged herein.

46. Plaintiff was treated differently by the Defendants in the terms and conditions of her employment and retaliated against due to her race, in violation of Title VII of the Civil Rights Act of 1964.

47. On October 29, 2020, Plaintiff engaged in protected activity by complaining to human resources about Defendants' discriminatory treatment based on Plaintiff's race. Specifically, Plaintiff told human resources that she was aware that she earned less in wages than similarly situated white coworkers. Human resources responded that she would bring Plaintiff's concern to the direct attention of Defendant Blair.

48. On November 4, 2020, only six days after Plaintiff complained of racial discrimination, Defendants summarily terminated Plaintiff allegedly for violations of overtime policy.

49. Defendants' alleged reason for terminating Plaintiff's employment is pretextual and baseless. Defendants terminated Plaintiff because she complained of racial discrimination on or about October 29, 2020.

50. Defendants intentionally violated Plaintiff's rights under Title VII, with malice or reckless indifference, and as a result, are liable for punitive damages.

WHEREFORE, Plaintiff demands judgment against Defendant in excess of Seventy-Five Thousand Dollars ($75,000) in compensatory and punitive damages, with interest and costs.

## COUNT THREE
### Malicious Prosecution

51. The allegations of Paragraphs 1 through 50 are incorporated by reference as if fully realleged herein.

52. On or about November 19, 2020, Defendant Blair caused Police Officer Kevin Thomas of the Baltimore City Police Department to swear out an application for a Statement of Charges before a Commissioner for the District Court of Maryland for

Baltimore City, charging Plaintiff with the crimes of theft and theft scheme, stating that Plaintiff unlawfully "made a transaction and purposefully paid an insufficient amount of currency for the product taken."

53. Defendant acted with malice and without probable cause in misrepresenting months of ordinary transactions as evidence of foul play, thereby causing the charges against Plaintiff to be issued. Malice was Defendant's primary motivation in instituting the proceeding against Plaintiff.

54. Defendant Matthew Blair was issued a subpoena by Clerk Mary J. Abrams on or about November 20, 2020 to appear as a witness for the State. Trial of Plaintiff on said charges commenced January 14, 2021 at 02:15 pm in the District Court of Maryland for Baltimore City. Defendant did not appear to testify. Upon the conclusion of the case, Plaintiff's charges were dismissed, *nolle prosequi*.

WHEREFORE, Plaintiff demands judgment against Defendant in excess of Seventy-Five Thousand Dollars ($75,000) in compensatory and punitive damages, with interest and costs.

## COUNT FOUR
### Defamation

55. The allegations of Paragraphs 1 through 54 are incorporated by reference as if fully realleged herein.

56. On or about December 5, 2020, in an effort to subvert the efforts of Plaintiff and her coworkers to obtain alternative employment in the Maryland cannabis industry by maligning them as thieves, Defendants posted a memorandum across social media

outlets claiming to have discovered irrefutable evidence that Plaintiff and her former coworkers were engaged in cannabis misappropriation.

57.  While the memorandum did not include names, Defendant Blair provided, by way of direct messages and text messages, the case numbers of Plaintiff and her coworkers, without being requested to do so, allowing their identities to be readily discerned.

58.  In his memorandum, Defendants knowingly made the aforementioned false and defamatory statements about Plaintiff.

59.  In the alternative, Defendants negligently made the aforementioned false and defamatory statements about Plaintiff.

60.  Defendant Blair acted with knowledge of the falsity of the statements and with the intent to harm Plaintiff's chances for finding industry employment when publishing these false and defamatory statements.

61.  As a result of the false and defamatory statements published by Defendants, the character and reputation of Plaintiff were harmed, her standing and reputation within Maryland's cannabis community were impaired, and she suffered mental anguish and personal humiliation.

62.  As a direct and proximate result of Defendants' false and defamatory statements, Plaintiff has not found employment within the insular Maryland cannabis industry, and thereby suffered a loss of prospective income which she would have earned from regular employment.

WHEREFORE, Plaintiff demands in excess of Seventy-Five Thousand Dollars ($75,000) in compensatory and punitive damages, with interest and costs.

### VI.  PRAYER FOR RELIEF

WHEREFORE, Plaintiff Jones respectfully prays this Court grant the following relief:

A. Accept jurisdiction over this matter;

B. Award Plaintiff for her past and future loss of wages and benefits, plus interest;

C. Order Defendants to reinstate Plaintiff to a position comparable to her former position, or in lieu of reinstatement, award her front pay, including benefits;

D. Award Plaintiff liquidated damages incurred in connection with this action, equal to the sum amount of backpay and interest;

E. Award Plaintiff compensatory and punitive damages, as well as reasonable attorney's fees and court costs in bringing this action; and

F. Order all other and further relief which this Court deems necessary to afford Plaintiff complete relief from the discriminatory acts complained of herein.

### VII.  JURY DEMAND

Plaintiff demands trial by jury on all issues triable as such.

**Affidavit**

I solemnly affirm under penalties of perjury that the contents of the foregoing Complaint are true and correct to the best of my knowledge, information, and belief.

/s/ Kamille D. Jones
_____
Kamille D. Jones, *Plaintiff*

Date of signing: October 10, 2021

**Certification and Closing**

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this Complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the Complaint otherwise complies with the requirements of Rule 11.

Respectfully Submitted,

/s/ Lindsey J. Parker
_____
Lindsey J. Parker, Esq. (Bar # 21776)
725 Ponca Street
Baltimore, MD 21224
(443) 345-8388 *direct*
(443) 335-8258 *fax*
Lindsey.parker@pm.me
*Attorney for Plaintiff*

Date of signing: October 10, 2021