**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Northern Division)**

| | | |
|---|---|---|
| KAMILLE D. JONES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Civil Action No. 1:21-cv-02606-ADC |
| | ) | |
| BLAIR WELLNESS CENTER, LLC *et al.* | ) | |
| | ) | |
| Defendants. | ) | |
| ——————————————— | ) | |
| | ) | |
| BLAIR WELLNESS CENTER, LLC, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| MATTHEW EDWARD BLAIR, | ) | |
| | ) | |
| Counter-Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| KAMILLE D. JONES | ) | |
| 10504 Cascade Run Court | ) | |
| Owings Mills, Maryland 21117 | ) | |
| | ) | |
| Counter-Defendant. | ) | |
| ——————————————— | ) | |

## **COUNTER-COMPLAINT**

Counter-Plaintiffs, Blair Wellness Center, LLC ("Blair Wellness"), a Limited Liability Company of the State of Maryland and Matthew Edward Blair ("Mr. Blair") (collectively, "Counter-Plaintiffs"), by and through their undersigned counsel, bring this Counter-Complaint against Counter-Defendant, Kamille D. Jones, ("Ms. Jones") and, in support thereof, state as follows:

## THE PARTIES

1. Blair Wellness is the holder of a medical cannabis dispensary license issued by the Maryland Medical Cannabis Commission (the "MMCC") pursuant to which it operates a medical cannabis dispensary in Baltimore City, Maryland, subject to the operation and effect of Maryland laws and the Code of Maryland Regulations ("COMAR").

2. Mr. Blair is a resident of Baltimore County, Maryland.

3. Ms. Jones is a resident of Baltimore County and a former at will employee of Blair Management, LLC ("Blair Management"), a Maryland Limited Liability Company.

## FACTUAL BACKGROUND

4. From approximately October 21, 2019 to November 5, 2020, Ms. Jones was employed by Blair Management to provide administrative services to Blair Wellness, initially in the capacity of patient advisor and, subsequently as an assistant inventory manager.

5. In early November of 2020, in the midst of the COVID-19 pandemic, Blair Management determined that it was necessary to restructure the business. As part of the restructure, Blair Management eliminated certain job positions in the company, including the assistant inventory manager position then held by Ms. Jones. Although Ms. Jones' position was eliminated, Blair Management offered Ms. Jones another opportunity within the company at a level similar in compensation and responsibility.

6. Unfortunately, Ms. Jones did not appreciate the efforts made by Blair Management to provide her with continued employment. Ms. Jones responded to her new opportunity negatively, making numerous derogatory statements about management, the business and her co-workers.

7.      Upon receipt of Ms. Jones' response to Blair Management's offer of continued employment, Blair Management reconsidered Ms. Jones' offer and determined that Ms. Jones' dissatisfaction and disrespect of management and her co-workers made her continued employment no longer possible.

8.      Accordingly, on November 5, 2020, Mr. Blair advised Ms. Jones that, *inter alia*, "you have displayed an attitude which makes me believe that you will not be able to carry on the responsibilities of the new position offered to you[,]" and withdrew the offer of employment made to Ms. Jones when her former position was eliminated.

9.      On November 9, 2020, Blair Management offered Ms. Jones a severance agreement in order to assist her in her transition from Blair Wellness. Before acceptance of the severance agreement by Ms. Jones, a routine audit of Blair Wellness's cannabis inventory revealed various discrepancies in transactions relating to several Blair Management employees, including Ms. Jones. Sales data and video surveillance revealed that these employees had made a number of medical cannabis purchases from Blair Wellness inventory for which they significantly undercharged each other or themselves. For example, a portion of the transactions relating to Ms. Jones established that on October 22, 2020, she purchased $35 worth of medical cannabis for which she only paid $3.50; on September 15, 2020, she purchased $108.50 worth of medical cannabis for which she only paid $10.80; on September 10, 2020, she purchased $219.00 of medical cannabis for which she only paid $11.00; and, on September 3, 2020, she purchased $104.27 worth of medical cannabis for which she only paid $10.42. This practice of significant underpayment for the purchase of medical cannabis products continued throughout the month of October of 2020.

10. COMAR 10.62.28.06 requires Maryland licensed medical cannabis dispensaries to investigate any theft or diversion of medical cannabis products and to report the same to the MMCC. Pursuant to this requirement, upon receipt of the audit report establishing "irregularities" in the purchases of medical cannabis by certain Blair Management employees, including Ms. Jones, Mr. Blair contacted the MMCC to report the behavior. The MMCC instructed Mr. Blair to report the potential theft to the Baltimore City Police Department.

11. Mr. Blair subsequently provided the information uncovered during the audit to the Baltimore City Police Department

12. The Baltimore City Police Department conducted its own investigation, including a review of Blair Wellness's product inventory records and sales transaction records. In addition, the Baltimore City Police Department also reviewed video surveillance of the dispensary operations showing transactions conducted by Blair Management employees, including Ms. Jones, at the times of some of the audit discrepancies. As a result of the Baltimore City Police Department's independent investigation, the Baltimore City Police Department instituted criminal charges against three Blair Management employees, including Ms. Jones.

13. Subsequently, Ms. Jones engaged in a campaign of unjustified and unwarranted malicious and revenge motivated activities against Blair Management, Blair Wellness and Mr. Blair, including but not limited to publishing numerous untrue allegations, exaggerations and misstatements about them in judicial proceedings and online in an attempt to injure the business of Blair Management and Blair Wellness and cause injury to Mr. Blair.

14. For example, in her appeal of an adverse decision rendered by the Maryland State Department of Labor with respect to her claim for unemployment benefits, Ms. Jones falsely accused Mr. Blair of being a "racist" and a "career criminal." In addition, Ms. Jones falsely asserted

that: (i) Mr. Blair sent her a "very aggressive email;" (ii) Mr. Blair tried to destroy Ms. Jones' reputation; (iii) Mr. Blair associated Ms. Jones with the "angry black woman stereotype;" (iv) Mr. Blair referred to other previous African American managers as disgruntled; (v) white employees who did the same thing as Ms. Jones were not charged with theft; (vi) Mr. Blair lied to the police; and (vii) and that Ms. Jones' [theft] case was "thrown out for lack of evidence."

15. Ms. Jones also intentionally provided false information to Jazz Baker, a publisher of a cannabis blog called "Black Cannabis Matters" concerning the operations of Blair Management and Blair Wellness and concerning Mr. Blair including that: (i) in a couple of cases black managers were fired without cause;( ii) it was likely that black managers were fired because Mr. Blair suspected that they were supporters of a recent unionization effort at Blair Wellness; (iii) Mr. Blair was aware since October 14 [2021] that employees were attempting to unionize and that he tried to divert the effort; (iv) Mr. Blair fired employees who voiced dissent in an effort to scare the rest of the employees and remove those supporting unionization; (v) black employees have been exploited the most in the daily operations of the dispensary; (vi) black employees were asked to sacrifice their free time the most when the business operation was short-staffed; (vii) black employees have been talked down to and blamed the most by upper-level management and listened to the least; and that the situation at Blair Wellness represented a distillation of structural racism, exploitive business practices and unequal access.  All of these false allegations and statements were made to Jazz Baker to promote and facilitate economic harm to Blair Wellness and Mr. Blair and cause serious and permanent injury to Blair Wellness's and Mr. Blair's reputation.

16. Similarly, Ms. Jones provided false information to Olga Reed, another publisher of the cannabis blog, "Black Cannabis Matters" concerning the operations of Blair Management and Blair Wellness and concerning Mr. Blair including that: (i) that Blair Wellness had become a seriously problematic dispensary over the past few months; (ii) the owner [presumably Mr. Blair] deliberately hid a COVID outbreak from the public; and (iii) that there were questionable firings of black managers for a messy in-house sampling system under which everyone was receiving free samples but only black managers were held accountable.

17. Ms. Jones also misused and submitted false information to the Maryland Judiciary. Specifically, on June 3, 2021, Ms. Jones caused a temporary peace order to be issued against Mr. Blair in the District Court of Maryland for Baltimore City (Case No. 0101SP049192021). In order to convince the Court to issue the temporary peace order, Ms. Jones falsely stated in her petition, under oath that Mr. Blair stalked her and approached or pursued her with the intent to place her in reasonable fear of serious bodily injury or death. The specific facts set forth in her petition did not support these false allegations. Accordingly, on June 7, 2021, after a temporary peace order hearing the Court denied the relief sought by Ms. Jones because she "could not meet [the] required burden of proof."

## COUNT ONE
**(Malicious Use of Process)**

18. Mr. Blair adopts and reasserts those allegations set forth in numbered paragraphs one through seventeen as if set forth fully herein.

19. The petition for peace order filed by Ms. Jones in Case No. 0101SP049192021 on or about June 3, 2021 contained false allegations and information, all of which were known to and by Ms. Jones as false when made.

20. Ms. Jones filed the petition for peace order as part of a campaign of malicious and revenge motivated activities directed against Counter-Plaintiffs as a result of her termination of employment, the required reporting to the MMCC and the subsequent criminal charges brought against Ms. Jones by the Baltimore City Police Department.

21. Case No. 0101SP049192021 was terminated in favor of Mr. Blair when the District Court ruled that Ms. Jones failed to meet her required burden of proof for the continuation of the peace order.

22. As a direct result of the malicious use of the legal process by Ms. Jones in Case No. 0101SP04919202, Mr. Blair suffered, and continues to suffer, special injuries.

23. For example, Ms. Jones was fully aware of the fact that Blair Wellness and Blair Management were in the process of negotiating a potential sale of Blair Wellness to a prospective purchaser and were in the midst of due diligence exercises when she filed Case No. 0101SP049192021. Ms. Jones filed Case No. 0101SP049192021 to cause the prospective purchaser to discover the existence of the case and use its existence to frustrate any economic benefits that might be received from such transaction. Upon information and belief, the prospective purchaser became aware of the allegations contained in Case No. 0101SP049192021 and subsequently determined that it did not wish to go forward with the proposed transaction.

24. Case No. 0101SP049192021continues to be reported on the Maryland Judiciary Case Search system, without the ability to expunge the record thereof, making the false allegations made by Ms. Jones available to be viewed by any member of the public, including news organizations, credit agencies, prospective employers and others. As a result of inquiries by the local press relative to Case No. 0101SP049192021, Counter-Plaintiffs have been required to

engage the services of a public relations representative in order to address these and other false allegations made by Ms. Jones.

WHEREFORE, this claim is brought and Mr. Blair demands an award of compensatory and punitive monetary damages and other just compensation in amounts to be determined at trial, such amounts being sufficient to make Mr. Blair whole by putting him in as good a pecuniary position as if the harm had not occurred; an award of fees, costs, expenses, and disbursements, including attorneys' fees and costs to which Mr. Blair is entitled; and any such other and further relief as this Court deems just and proper.

## COUNT TWO
### (Defamation)

25. Mr. Blair and Blair Wellness adopt and reassert those allegations set forth in numbered paragraphs one through twenty-four as if set forth fully herein.

26. Beginning on or about June 3, 2021, and continuing thereafter, Ms. Jones provided false information regarding the actions of Mr. Blair and the business operations of Blair Wellness to publishers of the medical cannabis blog, "Black Cannabis Matters" with the intention that the false information be published on the internet to members of the public and in particular, to African American customers of Blair Wellness.

27. The statements communicated by Ms. Jones to the "Black Cannabis Matters" were made by Ms. Jones with knowledge of their falsity and were defamatory. The false and defamatory statements injured Blair Wellness in the operation of its business and Mr. Blair in his profession and employment. The false and defamatory statements were intended to subject Counter-Plaintiffs to public scorn, hatred, contempt, and ridicule.

28.     The false and defamatory statements were made by Ms. Jones as part of a campaign of malicious and revenge motivated activities directed against the Counter-Plaintiffs, as a result of her termination of employment with Blair Management, the required reporting to the MMCC and the subsequent criminal charges brought against her by the Baltimore City Police Department.

29.     As a direct result of the malicious defamation by Ms. Jones, the Counter-Plaintiffs suffered, and continue to suffer, damages and injuries, including expenses incurred to protect their image and reputation, lost income and other related costs and expenses, including the hiring of a public relations professional at substantial cost to Counter-Plaintiffs.

WHEREFORE, this claim is brought and Counter-Plaintiffs demand an award of compensatory and punitive monetary damages and other just compensation in amounts to be determined at trial, such amounts being sufficient to make them whole by putting them in as good a pecuniary position as if the harm had not occurred; an award of fees, costs, expenses, and disbursements, including attorneys' fees and costs to which Mr. Blair is entitled; and any such other and further relief as this Court deems just and proper.

## COUNT THREE
**(Trover and Conversion – Wrongful Taking)**

30.     Blair Wellness adopts and reasserts those allegations set forth in numbered paragraphs one through twenty-nine as if set forth fully herein.

31.     During the course of, and as part of, her employment with Blair Management, Ms. Jones was provided access to the medical cannabis products belonging to Blair Wellness, including access to cash registers with which to record customer purchases and collect and secure payment for such products.

32.     Ms. Jones and several other Blair Management employees engaged in a calculated scheme of checking each other or themselves out for personal medical cannabis purchases and charging themselves significantly reduced amounts from the established retail cost of cannabis products, often well below the wholesale cost of such products. Such purchases at the prices charged were not authorized and constituted intentional conversion of Blair Wellness's inventory by Ms. Jones.

33.     The value of the Blair Wellness inventory so converted will be established by additional audits but is estimated at approximately Five Thousand Dollars ($5,000.00).

WHEREFORE, this claim is brought and Blair Wellness demands the sum of Five Thousand Dollars in compensatory damages from the Counter-Defendant with interest and costs and such other and further relief as this Court deems just and proper.

## JURY DEMAND

Counter-Plaintiffs demand a trial by jury on all issues triable as such.

Date:  June 2, 2022                    Respectfully submitted,

*/s/ Michael E. Blumenfeld*
Michael E. Blumenfeld ((Fed. Bar No. 25062)
Jeffrey T. Johnson (Fed. Bar No. 19876)
Nelson Mullins Riley & Scarborough, LLP
100 S. Charles Street, Suite 1600
Baltimore, MD 21201
Tel: 443-392-9402
Fax: 443-392-9499
Michael.Blumenfeld@nelsonmullins.com
Jeffrey.Johnson@nelsonmullins.com

*Counsel for Defendants/Counter-Plaintiffs*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that, on this 2nd day of June 2022, a copy of the foregoing Counter-Complaint was served via the Court's ECF system on:

Lindsey J. Parker, Esquire
725 Ponca Street
Baltimore, Maryland 21224

*Attorney for Plaintiff/ Counter-Defendant*

                                               */s/ Michael E. Blumenfeld*
                                               Michael E. Blumenfeld