IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

KAMILLE D. JONES,                    *
                                     *
            Plaintiff,               *
                                     *
    vs.                              *        Civil Action No. ADC-21-2606
                                     *
BLAIR WELLNESS CENTER, LLC et al.,   *
                                     *
            Defendants.              *
                                     *

* * * * * * * * * * * * * * * * * * * * * * * * * *

## MEMORANDUM OPINION

Defendants Blair Wellness Center, LLC ("Blair Wellness"), Blair Management, LLC ("Blair Management"), and Matthew Edward Blair (collectively, "Defendants") move this Court to dismiss, or in the alternative grant summary judgment on, Counts I and II of Plaintiff Kamille D. Jones's ("Plaintiff") First Amended Complaint (ECF No. 48) alleging race discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"). ECF No. 51.[1] After considering Defendants' Motion and the responses thereto (ECF Nos. 51, 55, 57), the Court finds that no hearing is necessary. Loc.R. 105.6 (D.Md. 2021). For the reasons stated herein, the Defendants' motion, construed as a motion to dismiss, is GRANTED IN PART, DENIED IN PART.

### FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff is a Black woman who worked at Blair Wellness Center, a medical cannabis retail business in Baltimore City, Maryland. ECF No. 48, ¶¶ 7-8. Plaintiff was hired in October 2019 as

---

[1] On October 12, 2021, this case was assigned to United States Magistrate Judge A. David Copperthite for all proceedings in accordance with Standing Order 2019-07. ECF No. 2. All parties voluntarily consented in accordance with 28 U.S.C. § 636(c). ECF Nos. 21, 54.

a "Patient Advisor," also known as a "budtender," and was promoted to Assistant Inventory Manager. *Id.* At ¶¶ 8-9. During the former Assistant Inventory Manager's tenure, upper management discovered "substantial discrepancies regarding dispensary inventory and [the Marijuana Enforcement Tracking Regulation and Compliance System]." *Id.* at ¶¶ 10-11. Despite these discrepancies, no disciplinary or adverse employment action was taken against the former Assistant Inventory Manager, a white male. *Id.* at ¶ 11. Shortly after the discrepancies were discovered, the Assistant Inventory Manager voluntarily resigned, and Plaintiff was promoted. *Id.* at ¶¶ 10-11. As Assistant Inventory Manager, Plaintiff was tasked with "designing and implementing procedures for bringing the dispensary's product intake, labeling, and storage systems into compliance with the applicable provisions of COMAR." *Id.* at ¶ 9. Although the inventory was "in complete disarray" when Plaintiff assumed the position, she did not receive any additional training or instruction.[2] *Id.* at ¶¶ 12-13.

While working as an Assistant Inventory Manager, Plaintiff discovered that she earned less than her white predecessor and white colleagues. *Id.* at ¶ 14. On October 29, 2020, Plaintiff raised the pay discrepancy with human resources, claiming racial discrimination.[3] *Id.* While Defendants never directly responded to Plaintiff's claims, they did lower "the white coworker's wages[.]" *Id.*

---

[2] Plaintiff's Amended Complaint asserts that she worked "as many as 60 hours per week" in order to: "(1) audit and bring the dispensary's inventory into COMAR compliance; (2) [] design and implement standard operating procedures for product intake and maintenance of proper vault organization; and (3) [] train ownership and management on those processes." ECF No. 48, at ¶ 12.

[3] Two days later, on October 31, 2020, Plaintiff was informed that a co-worker, with whom she had close contact, tested positive for COVID-19. ECF No. 48, at ¶ 16. Defendants did not, however, alert staff members until the middle of the next day, when Mr. Blair sent a staff-wide email asking that any employees who had contact with the infected staff member "go get a COVID-19 test before returning to work." *Id.* at ¶ 18. Because of her close contact with the infected employee, Plaintiff requested sick leave to take a COVID-19 test. *Id.* at ¶ 19. She alleges in her Amended Complaint that "at least half" of the Blair Wellness staff contacted COVID-19. *Id.* at ¶ 20.

at ¶ 15. Mr. Blair later informed Plaintiff that her position was being eliminated "due to COVID-19 economic downturns," and offered her a "lateral move" to a "non-management position" with a pay decrease. *Id.* at ¶ 21. After Plaintiff accepted the offer, she sent Mr. Blair an email inquiring about the benefits of her new position. *Id.* at ¶ 22. In response, Mr. Blair informed Plaintiff that the offer of employment was rescinded "because of her unacceptable attitude," and offered her a severance package in exchange for her agreeing to sign a "Mutual Release."[4] *Id.* at ¶¶ 22-23. Hours later, Plaintiff was informed by human resources that she was being terminated for "violations of overtime policy." *Id.* at ¶ 25.

On November 18, 2020, Plaintiff received an email from Mr. Blair stating that her severance package had been "revoked due to misconduct found in the course of a routine audit[.]" *Id.* at ¶ 29. The following day, Mr. Blair reported to the Baltimore Police Department that thousands of dollars of products were stollen from Blair Wellness between July 2020 and November 2020. *Id.* at ¶ 30. Although "[e]very single employee of Blair Wellness Center has received discounted and/or free promotional products," Plaintiff and Blair Wellness's "only other two Black managers" were criminally charged with the perpetration of a theft scheme. *Id.* at ¶¶ 30, 34. In her Amended Complaint, Plaintiff alleges that "[a]ll of the transactions presented to the police as evidence of theft and/or theft scheme were witnessed by other employees, and several were witnessed by members of upper management" as discounted rates could only be applied by a non-purchasing employee of Blair Wellness. *Id.* at ¶¶ 35-36. After criminal charges were filed, Mr. Blair authorized the circulation of a text message, email, and social media post informing staff

---

[4] The Mutual Release provided that Plaintiff would receive $1,000.00 in exchange for her releasing her employer from, among other things, "any claims for relief or causes of action under any federal, state, or local statute, ordinance or regulation regarding discrimination in employment and any claims, demands or actions based upon alleged wrongful or retaliatory discharge or breach of contract under any state or federal law." ECF No. 48, ¶ 23; ECF No. 48, Ex. C, ¶ 4.

members and customers that the three former employees had perpetrated a theft scheme.[5] *Id.* at ¶¶ 37-38. The State commenced a criminal trial against Plaintiff on January 14, 2021, and, although subpoenaed, Mr. Blair did not appear to testify. *Id.* at ¶¶ 43, 68. The charges were eventually dismissed *nolle prosequi. Id.* at ¶ 44.

Plaintiff filed an Amended Complaint in this Court on July 14, 2022. ECF Nos. 1, 48. Defendants filed the present motion on July 28, 2022. ECF No. 51. Plaintiff responded in opposition on August 11, 2022, and Defendants replied on August 25, 2022. ECF Nos. 55, 57.

## DISCUSSION

### A. Standard of Review

#### 1. Motion to Dismiss for Failure to State a Claim

The purpose of a Rule 12(b)(6) motion is to test the sufficiency of the Complaint, not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)). The Complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Facial plausibility exists when Plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* An inference of a "mere possibility of misconduct" is not sufficient to support a plausible claim. *Id.* at 679. "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. When considering a motion to dismiss, the Court must accept all factual allegations in the Complaint as

---

[5] Mr. Blair also posted and sent the case number on social media. ECF No. 48, ¶¶ 38, 41.

true, but not legal conclusions couched as factual allegations. *Id.* (citations omitted). When deciding a motion under Rule 12(b)(6) courts may, in addition to the complaint and matters of public record, "consider documents attached to the complaint, *see* Fed.R.Civ.P 10(c), as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic." *Phillips v. Pitt Cnty. Mem'l. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009); *see also Episcopal Church in S.C. v. Church Ins. Co. of Vt.*, 997 F.3d 149, 154 (4th Cir. 2021) ("[W]e may consider authentic, extrinsic evidence that is integral to the complaint, as well as matters of public record.").

2. Motion for Summary Judgment

Pursuant to Rule 56, a movant is entitled to summary judgment where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact. Fed.R.Civ.P. 56(a). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) ("[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." (emphasis in original)). An issue of fact is material if, under the substantive law of the case, resolution of the factual dispute could affect the outcome. *Anderson*, 477 U.S. at 248. There is a genuine issue as to material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id. See Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012). On the other hand, if after the Court has drawn all reasonable inferences in favor of the nonmoving party and "the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50 (citations omitted).

5

The party seeking summary judgment bears the initial burden of establishing either that no genuine issue of material fact exists or that a material fact essential to the non-movant's claim is absent. *Celotex Corp.*, 477 U.S. at 322–24. Once the movant has met its burden, the onus is on the non-movant to establish that there is a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In order to meet this burden, the non-movant "may not rest upon the mere allegations or denials of [its] pleadings," but must instead "set forth specific facts showing that there is a genuine issue for trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (quoting Fed.R.Civ.P. 56(e)).

## B. Conversion

Defendants have styled their motion as a Motion to Dismiss, or in the alternative, Motion for Summary Judgment. ECF No. 51. A motion posed in the alternative implicates the Court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. *See Kensington Vol. Fire Dept., Inc. v. Montgomery Cnty.*, 788 F.Supp.2d 431, 436–37 (D.Md. 2011), *aff'd* 684 F.3d 462 (4th Cir. 2012). If a Court considers documents that are not integral to or incorporated in the complaint, Rule 12(d) provides that the Rule 12(b)(6) motion "must be treated as one for summary judgment under Rule 56." Fed.R.Civ.P. 12(d). "The Court 'has complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it.'" *Jackson v. Sagal*, 370 F.Supp.3d 592, 598 (D.Md 2019) (quoting *Wells-Bey v. Kopp*, No. ELH-12-2319, 2013 WL 1700927, at *5 (D.Md Apr. 16, 2013)). In general, courts are guided by whether consideration of extraneous material "is likely to facilitate the disposition of the action," and "whether discovery prior to the utilization of the summary judgment procedure" is necessary. 5C CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL

6

PRACTICE & PROCEDURE § 1366 (3d ed. 2004, 2011 Supp.). The United States Court of Appeal for the Fourth Circuit has noted that conversion of a Rule 12(b)(6) motion to dismiss to a Rule 56 motion for summary judgment is proper when all parties are: (1) on notice that conversion may occur and (2) given a reasonable opportunity for discovery. *Greater Balt. Ctr. For Pregnancy Concerns, Inc. v. Mayor of Balt.*, 721 F.3d 264, 281 (4th Cir. 2013).

Here, Plaintiff was on notice that conversion may occur, as the Defendants styled their motion "in the alternative." *See Estate of Grillo by Grillo v. Thompson*, No. GLR-21-3132, 2022 WL 3027859, at *3 (D.Md Aug. 1, 2022) ("When the movant states in the first paragraph of its motion that it seeks to convert the motion to one for summary judgment and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule12(d) may occur."). However, Plaintiff has not had a reasonable opportunity to discover information from Blair Management, as the Company was added to the suit just 14 days before the instant motion was filed. *See* ECF No. 48; ECF No. 51. Accordingly, conversion is premature, and the Court construes Defendants' motion as a motion to dismiss for failure to state a claim brought under Rule 12(b)(6).

Although I construe Defendants' motion under Rule 12(b)(6), I find that Exhibit B, Plaintiff's Offer of Employment; Exhibit C, Paystubs from Blair Management; Exhibit D, Request for Separation Information; and Exhibit E, Letter to the Equal Employment Opportunity Commission ("EEOC") attached to Defendants' motion are "authentic" and "integral" to the Amended Complaint. ECF No. 51, Ex. B, Ex. C, Ex. D., Ex. E. Plaintiff's action centers around her employment and these documents bear directly on which entity or entities employed her. Although Plaintiff disputes the authenticity of other documents, she does not challenge the authenticity of the Offer of Employment, Paystubs, Request for Separation Information, or Letter

to the EEOC. In ruling on this motion, I may also consider the documents attached and incorporated into Plaintiff's Amended Complaint, which include: (1) her EEOC Right to Sue Letter; (2) Blair Wellness's Agent Verification Report; (3) the Mutual Release; (4) Blair Wellness Social Media Post; and (5) Email from Mr. Blair to Plaintiff. *See* ECF Nos. 48-2, 48-3, 48-4, 48-5, 48-6.

## C.    Defendants' Motion

### 1.    "Employers" Under Title VII

Defendants argue that Counts I and II of the Amended Complaint, alleging discrimination and retaliation under Title VII, should be dismissed as to Blair Wellness and Mr. Blair as they were not Plaintiff's "employers" under Title VII. *See* ECF No. 51, 10-14. Plaintiff responds by asserting that Blair Wellness, Blair Management, and Mr. Blair are joint employers. ECF No. 55, 7-14. In her view, she was employed by Blair Wellness as the entity exercised "statutory control over the entire cannabis retail operation." *Id.* at 10. In support of this argument, Plaintiff points to the regulations governing Blair Wellness's medical cannabis dispensary license, which require that it register its dispensary agents with the Maryland Medical Cannabis Commission. *Id.* at 6. Any management services provided by Blair Management, Plaintiff argues, were "merely auxiliary services provided in support of Blair Wellness's dispensary operations." *Id.* Mr. Blair, Plaintiff alleges, was also an employer because he "exert[ed] actual control, unilaterally controlling employee hiring and terminations, payroll, and employee discipline." *Id.* at 10.

Title VII prohibits an *employer* from, among other things, discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individuals race, color, religion, sex, or national origin," 42 U.S.C. § 2000e-2(a)(1), and retaliating against any employee "because he has opposed any practice made an

unlawful employment practice" under Title VII, 42 U.S.C. § 2000e-3(a). A prima facie case for discrimination in violation of Title VII, in the absence of direct evidence, requires that a plaintiff allege: "(1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class." *Coleman v. Maryland Ct. of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010), *aff'd sub nom.* 566 U.S. 30 (2012) (citing *White v. BFI Waste Servs., LLC,* 375 F.3d 288, 295 (4th Cir. 2004)). And, to make a prima facie case of retaliation under Title VII in the absence of direct evidence plaintiffs must prove that they "'engaged in protected activity,' that [their] employer 'took adverse action against [them],' and that 'a casual relationship existed between the protected activity and the adverse employment activity.'" *Roberts v. Glenn Indus. Grp., Inc.*, 998 F.3d 111, 122 (4th Cir. 2021) (quoting *Foster v. Univ. of Md.-E. Shore,* 787 F.3d 243, 250 (4th Cir. 2015)). However, at the motion to dismiss stage, Plaintiff need not plead facts sufficient to constitute a prima facie case of discrimination or retaliation, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002), but must only "allege facts to satisfy the elements of a cause of action created by" Title VII, *McCleary-Evans v. Md. Dep't of Transp.*, 780 F.3d 582, 585 (4th Cir. 2015).

An "employer" under Title VII is defined as a "person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person."[6] 42 U.S.C. § 2000e(b). "[T]he term 'employer' is intended to have its common dictionary meaning." *Bonomo v. Nat'l Duckpin Bowling Cong., Inc.*, 469 F.Supp. 467, 472 (D.Md. 1979) (quoting *Burke v. Friedman*, 556 F.2d 867, 870 (7th Cir. 1977)). However, to effectuate the remedial purpose of

---

[6] Title VII similarly defines "employee" as "an individual employed by an employer[.]" 42 U.S.C. § 2000e(f).

Title VII, the word "employer" is liberally construed. *Butler v. Drive Auto Indus. of Am., Inc.*, 793

F.3d 404, 409 (4th Cir. 2015) (quoting *Baker v. Stuart Broad. Co.*, 560 F.2d 389, 391 (8th Cir.

1977)).

In order to prevent "those who effectively employ a worker from evading liability by hiding

behind another agency," the United States Court of Appeals for the Fourth Circuit has determined

that "multiple entities may simultaneously be considered employers for the purposes of Title VII."

*Id.* at 410. Courts in this circuit apply a "hybrid test" to determine whether an individual is jointly

employed by two or more entities. *Id.* at 413-14. Under the "hybrid test" courts are to consider

whether the entity has:

> (1) authority to hire and fire the individual;
> (2) day-to-day supervision of the individual, including employee discipline;
> (3) whether the putative employer furnishes the equipment used and the place of work;
> (4) possession of and responsibility over the individual's employment records, including payroll, insurance, and taxes;
> (5) the length of time during which the individual has worked for the putative employer;
> (6) whether the putative employer provides the individual with formal or informal training;
> (7) whether the individual's duties are akin to a regular employee's duties;
> (8) whether the individual is assigned solely to the putative employer; and
> (9) whether the individual and putative employer intended to enter into an employment relationship.

*Id.* at 414. While "none of these factors are dispositive," the first three "are the most important"

and "control remains the principal guidepost for determining whether multiple entities can be

plaintiff's joint employers." *Id.* at 414-15.

In *Butler v. Drive Automotive Industries of America, Inc.*, the United States Court of

Appeals for the Fourth Circuit determined that an employee who had been hired and fired by a

staffing agency was also employed by the business where the staffing agency had assigned her.

793 F.3d 404, 415 (4th Cir. 2015). The Court reasoned that the business "exhibited a high degree

of control over the terms of [plaintiff's] employment" as it sent an email to the staffing agency
directing that Plaintiff be replaced. *Id.* The business also supervised all the employees on site—
those hired directly and those placed by the staffing agency. *Id.* The Court further noted that
staffing agency employees worked side-by-side with the other employees, performing the same
tasks and using the same equipment. *Id.* And, the staffing agency employees "performed the same
tasks as the [business employees] and produced goods that were [the entity's] core business." *Id.*
Accordingly, although the staffing agency "disbursed [plaintiff's] paychecks, officially terminated
her, and handled employee discipline," the business entity still exercised "a substantial degree of
control over the circumstances of [plaintiff's] employment" and was thus, a joint employer. *Id.* at
415-16.

Here, Plaintiff's claim that Blair Wellness "is an employer as defined by Title VII" is
contradicted by numerous documents. ECF No. 48, ¶ 8. Specifically, her Offer of Employment
states that "Blair Management, LLC is pleased to present you with this offer of employment to
serve . . . at Blair Wellness Center," ECF No. 51, Ex. B., and the mutual release is effective between
Plaintiff and Blair Management, LLC, ECF No. 48, Ex. C. Based on these documents Blair
Management—not Blair Wellness—had the ability to hire and fire Plaintiff (factor 1). This entity
structure is supported by an email sent from Mr. Blair to Plaintiff on May 29, 2021, in which Mr.
Blair noted that "Blair Management offered [Plaintiff] a lateral move" and that "Blair Management
has been an ardent supporter of minorities." ECF No. 48-6, 1. The Offer of Employment also
details that Plaintiff was subject to Blair Management's employee handbook and could obtain
benefits in accordance with Blair Management's policies (factor 2). ECF No. 51, Ex. B. Plaintiff's
earning statements are also issued by "Blair Management" and the Maryland Department of

Labor's "Request for Separation Information" was addressed to "Blair Management LLC" (factor 4). ECF No. 51, Ex. C, Ex. D.

Plaintiff's assertion that Blair Wellness was her "employer" by virtue of its reporting and regulatory requirements under COMAR is also unconvincing. Plaintiff is correct that, as a licensed Medical Cannabis Dispensary, Blair Wellness is required to, among other things: register its dispensary agents; annually verify that its dispensary agents have not been convicted of any felony drug offenses; establish standard operating procedures; and keep records related to the facility. *See* COMAR 10.62.26.03(A); COMAR 10.62.26.09; COMAR 10.62.28.02; COMAR 10.62.32.02. These requirements as a licensee do not, however, make all Medical Cannabis Dispensaries "employers" under Title VII, as they do not bear ultimately on whether the entity exercises a "substantial degree of control over the circumstances of [a plaintiff's] employment." *Butler*, 793 F.3d at 415. In fact, the COMAR title governing Medical Cannabis Dispensary Licenses specifically permits licensees to adopt "Management Agreements" with other entities.[7] *See* COMAR 10.62.25.12.

Because Plaintiff's Amended Complaint does not, under the factors articulated in *Butler*, sufficiently alleged that Blair Wellness was an "employer" under Title VII, she has not pleaded information sufficient to allow "the court to draw the reasonable inference that [Blair Wellness] is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Accordingly, Counts I and II against Blair Wellness must be dismissed.

I next address whether Mr. Blair qualifies in his individual capacity as an "employer" under Title VII. This Circuit has long held that "supervisors are not liable in their individual capacities

---

[7] Under this title a "Management agreement" is defined as "an agreement between a licensee and a third party under which the third party receives control of the business in exchange for a fee, financial interest, or percentage of the licensee's revenue." COMAR 10.62.01.01(28).

for Title VII violations." *Lissau v. Southern Food Servs. Inc*, 159 F.3d 177, 181 (4th Cir. 1998).

Therefore, individuals are liable under Title VII only if they qualify as "employers." *Baird ex rel.*

*Baird v. Rose*, 192 F.3d 462, 472 (4th Cir. 1999) ("We have expressly held that Title VII does not

provide a remedy against individual defendants who do not qualify as 'employers.'"). Here,

Plaintiff asserts in her Amended Complaint that Mr. Blair is an "employer" because he is the sole

member of Blair Management and owns the real property where Blair Wellness is located, 5806

York Road, Baltimore City, Maryland. ECF No. 48, ¶ 10. As discussed above, the documents

attached to the Amended Complaint and Defendants' Motion show that Blair Management, and

not Mr. Blair individually, exercised "a substantial degree of control over the circumstances" of

Plaintiff's employment. *Butler*, 793 F.3d at 415. Mr. Blair's role as the sole member of the entity

was, therefore, akin to a supervisor acting on behalf of Blair Management, and not that of an

"employer." Accordingly, Counts I and II must also be dismissed as to Mr. Blair individually.[8]

---

[8] Plaintiff's argument that Blair Management and/or Mr. Blair are alter-egos or integrated enterprises of Blair Wellness is also unavailing. The Maryland Court of Appeals has announced that the alter ego doctrine should be applied only in "exceptional circumstances" when a plaintiff shows:

> (1) complete domination, not only of the finances, but of policy and business practice in respect to the transaction so that the corporate entity as to this transaction had at the time no separate mind, will or existence of its own, (2) that such control [was] used by the defendant to commit fraud or wrong, to perpetrate the violation of the statutory or other positive legal duty, or dishonest and unjust act in contravention of the plaintiff's legal rights, and (3) that such control and breach of duty proximately caused the injury or unjust loss.

*Roley v. Nat. Prof. Exch., Inc.*, 474 F.Supp.3d 708, 726 (D.Md 2020) (quoting *Hildreth v. Tidewater Equip. Co.*, 378 Md. 724, 735 (2003)). Similarly, "[t]he integrated-employer test involves four elements: '(1) common management; (2) interrelation between operations; (3) centralized control of labor relations; and (4) degree of common ownership/financial control.'" *Gilbert v. Freshbikes, LLC*, 32 F.Supp.3d 594, 602 (D.Md 2014) (citations omitted). Here, Plaintiff's Amended Complaint explains that Blair Management and Blair Wellness co-exist via an "administrative services agreement," under which Blair Management "provide[s] payroll and administrative services for Blair Wellness[.]" ECF No. 48, ¶ 9. Because Blair Management

2.      Administrative Exhaustion and the Relation Back Doctrine

Defendants argue that Plaintiff's claims against Blair Management are time-barred, as she failed to exhaust her administrative remedies and failed to timely file suit against the entity. ECF No. 51, 14. And, in Defendants' view, Plaintiff's claims cannot "relate back to the filing of her original Complaint," as she could not have been mistaken as to the identity of her employing entity. *Id.* In response, Plaintiff argues that Blair Management was on notice that it was the proper entity to the suit, as demonstrated by its "full and complete response to the EEOC." ECF No. 55, 16. Incorrectly naming Blair Wellness, Plaintiff asserts, was not malicious given the "complete lack of distinction maintained between the entities." ECF No. 55, 16-17.

Generally, Plaintiffs alleging discrimination or retaliation in violation of Title VII "must first file an administrative charge with the EEOC within a certain time of the alleged unlawful act." *Chacko v. Patuxent Inst.*, 429 F.3d 505, 508 (4th Cir. 2005). This requirement is designed to "provide notice to the charged party and to permit the EEOC to attempt voluntary conciliation of complaints." *Alvarado v. Bd. of Tr. of Montgomery Cmty. Coll.*, 848 F.2d 457, 460 (4th Cir. 1988). "The failure to file a complaint with the EEOC in a timely manner deprives [courts] of subject-matter jurisdiction over the claim." *Dolgaleva v. Va. Beach City Pub. Sch.*, 364 F.App'x 820, 824 (4th Cir. 2010). The EEOC charge must contain allegations "sufficiently precise to identify the parties, and to describe generally the action or practices complained of." *Chacko*, 429 F.3d at 508 (quoting 29 C.F.R. § 1601.12(b)). EEOC charges, however, do not "require procedural exactness from lay complainants: 'EEOC charges must be construed with utmost liberality since they are

provided a limited and distinct set of services for Blair Wellness, as explained in the Amended Complaint, I find that Plaintiff has not sufficiently plead that either entity completely controlled the other. Accordingly, application of the alter-ego or integrated employer doctrine is unwarranted.

made by those unschooled in the technicalities of formal pleading.'" *Alvarado*, 848 F.2d at 460 (quoting *Kaplan v. Int'l All. of Theatrical & Stage Emps.*, 525 F.2d 1354, 1359 (9th Cir. 1975)).

In *Alvarado*, plaintiff, in his self-represented EEOC charge, incorrectly listed his employer as "Montgomery Community College." 848 F.2d at 460. Through counsel, plaintiff subsequently initiated a lawsuit against "the Board of Trustees of Montgomery Community College" which was the proper entity to be sued under the Education Article of the Maryland Code. *Id.* The United States Court of Appeals for the Fourth Circuit held that, despite the discrepancy, plaintiff had satisfied the EEOC charge naming requirement as it was not "reasonable to have expected [plaintiff] to know that Maryland statutes provide that the board of trustees of the college is the appropriate entity to 'sue and be sued.'" *Id.* The Court reasoned that the goals of the naming requirement were "in no way compromised" as the "[t]he college, and therefore the board in its official capacity, was fully represented by counsel at all administrative and court proceedings" and there was "no functional difference between the notice and participation afforded by naming the college in the administrative complaint and what would have been afforded had the board been named instead." *Id.* More recently in *Familia v. High*, No. TDC-21-1139, 2022 WL 899747, at *5 (D.Md March 28, 2022), this Court, applying *Alvarado*, found that a discrepancy between a party named in an EEOC charge and in subsequent litigation did not preclude the suit from continuing, as the mistake resulted from "the unique complications surrounding the legal status of the sheriff's offices in Maryland[.]" *Id.* Similar to *Alvarado*, the Court reasoned that it was: (1) not reasonable, given the complex entity relationships, to require that plaintiff appreciate the correct entity to sue and (2) not persuaded by the County's argument "that it was prejudiced in the administrative proceedings by" plaintiff's "failure to name" it. *Id.* at *5-6.

15

Here, Plaintiff worked at Blair Wellness but was under the supervision and control of Blair Management. ECF No. 48, ¶¶ 7-8. Like her counterparts in *Alvarado* and *Familia*, Plaintiff incorrectly named the entity "where [s]he worked" in her EEOC charge and now, in federal court, has sued a different, but related, entity. *Alvera*, 848 F.2d at 460; *see also* ECF No. 48-2. Although Plaintiff received several documents indicating that Blair Management was her "employer," it is unreasonable to expect a lay person, uneducated in the legal strictures of Title VII, to appreciate the legal distinction between Blair Wellness and Blair Management. Both entities have similar names, common ownership, and conduct business at 5806 York Road, Baltimore City, Maryland. ECF No. 48, ¶¶ 8-9. Blair Management has also failed to assert that Plaintiff's naming discrepancy has resulted in any prejudice. Blair Management was fully represented before the EEOC by the same counsel representing Blair Wellness. *See* ECF No. 51, Ex. E ("Please be advised that the undersigned represents Blair Management, LLC . . . and Blair Wellness Center[.]"). Accordingly, to dismiss the claims against Blair Management for failure to exhaust administrate remedies would be to apply the EEOC charge naming requirement "in a hypertechnical fashion," which I decline to do. *Alvera*, 848 F.2d at 458.

Because Plaintiff originally filed suit in this Court against Blair Wellness, as opposed to Blair Management, I must now determine whether her claims against Blair Management are time barred. In situations such as this, a EEOC charge must be filed "by or on behalf of the person aggrieved within three hundred days after the alleged unlawful employment practice occurred[.]" 42 U.S.C. § 2000e-5(e)(1). Should the EEOC issue a right to sue letter, aggrieved parties have "ninety days after the giving of such notice" to bring "a civil action . . . against the respondent named in the charge[.]" *Id.* at (f)(1). Here, Plaintiff was issued her right to sue letter on July 13, 2021 and filed suit against Blair Wellness and Mr. Blair on October 10, 2021. *See* ECF No. 48-2;

16

ECF No. 1, 15. Plaintiff's Amended Complaint, naming Blair Management as a party to the suit, however, was not filed until July 14, 2022, well outside of the ninety-day filing deadline. ECF No. 48. Therefore, the dispositive question is whether the allegations in Plaintiff's Amended Complaint against Blair Management "relate back" to her original Complaint.

A party challenging a Rule 15(c) amendment through a Rule 12(b)(6) motion to dismiss is challenging the sufficiency of the amended complaint. *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (en banc). "Ordinarily, a defense based on the statute of limitations must be raised by the defendant through an affirmative defense, *see* Fed.R.Civ.P. 8(c), and the burden of establishing the affirmative defense rests on the defendant," *Goodman*, 494 F.3d at 464. Therefore, courts "cannot reach the merits of an affirmative defense" when deciding a motion to dismiss under Rule 12(b)(6) unless "all facts necessary to the affirmative defense 'clearly appear[] *on the face of the complaint*,'" *Goodman*, 494 F.3d at 464 (quoting *Richmond, Fredericksburg & Potomac R.R. v. Frost*, 4 F.3d 244, 250 (4th Cir. 1993) (emphasis in *Goodman*)).

Ordinarily, a district court "should freely give leave when justice so requires." Fed.R.Civ.P. 15(a)(2); *see also In re Triangle Cap. Corp. Sec. Litig.*, 988 F.3d 743, 750 (4th Cir. 2021). Under Rule 15(c) of the Federal Rules of Civil Procedure, an amended pleading relates back to the date of the original pleading when:

> (A) the law that provides the applicable statute of limitations allows relation back;
>
> (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading; or
>
> (C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:
>> (i) received such notice of the action that it will not be prejudiced in defending on the merits; and

17

> (ii) knew or should have known that the action would have been brought against
> it, but for a mistake concerning the proper party's identity.

The United States Court of Appeals for the Fourth Circuit has reasoned that:

> [A]n amendment that changes the party against whom a claim is asserted relates
> back to the date of the original pleading if (1) the claim in the amended complaint
> arose out of the same transaction that forms the basis of the claim in the original
> complaint; (2) the party to be brought in by the amendment received notice of the
> action such that it will not be prejudiced in maintaining a defense to the claim; and
> (3) it should have known that it would have originally been named a defendant "but
> for a mistake concerning the identity of the proper party."

*Goodman v. Praxair, Inc.*, 494 F.3d 458, 467 (4th Cir. 2007) (en banc). "These core requirements preserve for the new party the protections of a statute of limitations" by "assur[ing] that the new party had adequate notice *within the limitations period* and was not prejudiced by being added to the litigation." *Id.* at 470 (emphasis in original).

Here, the claims asserted in Plaintiff's Amended Complaint "arise from the same transaction" as her original Complaint, as all of the claims asserted relate to her employment at Blair Wellness. ECF No. 1; ECF No. 48. Additionally, Blair Management is not prejudiced by the Rule 15(c) amendment as it fully participated in the administrative proceedings before the EEOC and its sole member, Mr. Blair, was named as a defendant in the original Complaint. *See* ECF No. 51, Ex E. Finally, Blair Management knew, or should have known, that it, and not Blair Wellness, was the proper party to the present action. *See Krupski v. Costa Crociere S.p.A*, 560 U.S. 538, 554 (2010) (A court focuses its inquiry on "the defendant's understanding of whether the plaintiff made a mistake"); ECF No. 47, 2. Indeed, Blair Management acknowledged in a letter to the EEOC that: "[Plaintiff] has filed her complaint against the wrong entity[.]" ECF No. 51, Ex. E. Therefore, the Court concludes that it will not dismiss the Title VII claims against Blair Management as the Amended Complaint does not, on its face, allege facts sufficient to conclude that the claims cannot relate back to the original Complaint.

## CONCLUSION

For the reasons set forth in this Memorandum Opinion, Defendants' Motion (ECF No. 51)

is GRANTED IN PART, DENIED IN PART. A separate Order will follow.

Date: _1 September 2022_

_____

A. David Copperthite
United States Magistrate Judge