# EXHIBIT G



# Planet Depos
We Make It Happen

# Transcript of Erik Spangler

**Date:** February 15, 2023
**Case:** Jones -v- Blair Wellness Center, LLC, et al.

**Planet Depos**
**Phone:** 888-433-3767
**Fax:** 888-503-3767
**Email:** transcripts@planetdepos.com
www.planetdepos.com

WORLDWIDE COURT REPORTING & LITIGATION TECHNOLOGY

## Page 1

```
 1        IN THE UNITED STATES DISTRICT COURT
 2            FOR THE DISTRICT OF MARYLAND
 3                  (Northern Division)
 4   ---------------------------x
 5   KAMILLE D. JONES            :
 6        Plaintiff,             :
 7     v.                        : Civil Action No.:
 8   BLAIR WELLNESS CENTER, LLC, : 1:21-cv-02606-ADC
 9   et al.                      :
10        Defendants             :
11   ---------------------------x
12   BLAIR WELLNESS CENTER, LLC, :
13        Counter-Plaintiffs     :
14     v.                        :
15   KAMILLE D. JONES            :
16        Counter-Defendant      :
17   ---------------------------x
18            Deposition of ERIK SPANGLER
                   Baltimore, Maryland
19            Wednesday, February 15, 2023
                     10:03 A.M. EST
20   Job No.: 480895
21   Pages: 1 - 173
22   Reported by: Dawn M. Hyde, Notary Public
```

## Page 2

1  Deposition of ERIK SPANGLER, held at the
2  offices of:
3
4
5      NELSON MULLINS RILEY & SCARBOROUGH, LLP
6      100 South Charles Street, Suite 1600
7      Baltimore, Maryland 21201
8
9
10     Pursuant to notice and subpoena, before
11 Dawn M. Hyde, Notary Public in and for the State of
12 Maryland.

## Page 3

APPEARANCES

ON BEHALF OF THE PLAINTIFF:

    LINDSEY J. PARKER, ESQUIRE (via telephone)

    725 Ponca Street

    Baltimore, Maryland 21224

    (443) 345-8388

ON BEHALF OF THE DEFENDANTS:
    JEFFREY T. JOHNSON, ESQUIRE
    NELSON MULLINS RILEY & SCARBOROUGH, LLP
    100 South Charles Street, Suite 1600
    Baltimore, Maryland 21201
    (443) 392-9402

## Page 4

CONTENTS

| EXAMINATION OF ERIK SPANGLER | PAGE |
|---|---|
| By Mr. Johnson | 5, 170 |
| By Ms. Parker | 163 |

EXHIBITS
(ATTACHED)

| SPANGLER DEPOSITION EXHIBITS | PAGE |
|---|---|
| Exhibit 1  Subpoena | 19 |
| Exhibit 2  Text messages from Mr. Spangler to Jazz Baker and others | 21 |
| Exhibit 3  Text messages from Mr. Spangler to Ms. Jones, 11/16/20 | 104 |
| Exhibit 4  Text messages from Mr. Spangler to Ms. Jones, 12/1/20 | 116 |
| Exhibit 5  Mr. Spangler's notes, 12/3/20 | 122 |

**Page 5**

1  PROCEEDINGS
2  Whereupon,
3      ERIK SPANGLER,
4  being first duly sworn or affirmed to testify to the
5  truth, the whole truth, and nothing but the truth,
6  was examined and testified as follows:
7      EXAMINATION BY COUNSEL FOR THE DEFENDANTS
8  BY MR. JOHNSON:
9    Q   Good morning, Mr. Spangler.
10   A   Good morning.
11   Q   As you know by now, my name is Jeff
12 Johnson. I represent Matthew Blair, Blair
13 Wellness Center and Blair Management in a lawsuit
14 that's been filed by Kamille Jones.
15   A   Uh-huh.
16   Q   We're here today for the taking of your
17 deposition in light of the fact that Ms. Jones has
18 identified you as someone with knowledge relevant
19 to her claims against my client; do you understand
20 that?
21   A   Yes.
22   Q   Have you had your deposition taken

**Page 6**

1  before?
2    A   No.
3    Q   Okay. So I'm going to go over a couple
4  ground rules just to describe to you kind of the
5  process of how this works.
6    A   Okay.
7    Q   So you're providing answers today under
8  oath, the same penalty of perjury that would apply
9  if you were providing testimony in a court
10 proceeding; do you understand that?
11   A   Yes.
12   Q   One of the things you'll have to do is
13 you may understand where I'm going with a
14 particular question and feel like you can answer
15 it. The issue is the court reporter to my right,
16 your left, is creating a transcript. So it makes
17 it hard for her to pick up, you know, the
18 questions and answers if we're talking over each
19 other.
20   A   Yes.
21   Q   And I know that's kind of different in
22 the way things would go in like a conversation

**Page 7**

1  where you would kind of know where I'm going and
2  you would answer the question. But if you can let
3  me finish my questions before you provide an
4  answer and I'll allow you to finish your answer
5  before I ask another question --
6    A   Absolutely.
7    Q   -- that will make for a cleaner
8  record --
9    A   Okay.
10   Q   -- for our court reporter today.
11   A   Okay.
12   Q   You know, the purpose of today's
13 deposition is to obtain truthful and accurate
14 testimony as you can provide regarding Ms. Jones
15 and her claims; do you understand that?
16   A   Uh-huh. Yes.
17   Q   And again, you just need to wait until
18 I've finished the question before you provide an
19 answer.
20   A   Sorry.
21   Q   Just for her purposes to keep our court
22 reporter happy and sane.

**Page 8**

1      Now, if at any point during the
2  deposition something occurs to you that didn't
3  occur to you earlier in the deposition when you
4  were answering an earlier question, you can feel
5  free to let me know that and, you know, amend your
6  answer, provide the most complete testimony you
7  can provide.
8    A   Okay.
9    Q   If you have trouble hearing or don't
10 understand any of my questions, please let me
11 know. I'll be happy to rephrase it.
12   A   Okay.
13   Q   But if you do provide an answer, I'm
14 going to assume that you've understood the
15 question and that you heard it okay; is that fair?
16   A   Yes.
17   Q   You have to give verbal answers to my
18 questions. Again, this is another thing because
19 of the court reporter and the record that we're
20 creating, she can't pick up, you know, head nods,
21 uh-uhs, uh-huhs. So try to keep that in mind as
22 you're answering questions as well.

```
                                              85
 1  adviser, I could not check myself out.  You know,
 2  I would have to go to someone who is in a manager
 3  position.
 4      Q   Okay.  Who would typically check you
 5  out?
 6      A   I mean, I think I had them all check me
 7  out at different points.  Melissa, Danny, Chris
 8  Blair, Devon, Chelsea, Kendall, Kamille.
 9      Q   What was Chelsea Kelly's role at the
10  dispensary?  What was her title?
11      A   She was a manager.  I don't remember if
12  like manager -- what -- dispensary manager was an
13  official title that she had but she would be often
14  working in the front office.  Not usually doing
15  like, you know, patient advising.  And she would
16  oversee how the dispensary was running, making
17  sure that everything was cleaned up at the end of
18  the night so...
19      Q   Would she ever check you out when you
20  were buying product as an employee?
21      A   I don't remember for sure.
22      Q   Okay.  Would it be uncommon for

                                              86
 1  Ms. Kelly to check people out when they're buying
 2  product?
 3      A   No.
 4      Q   Would it be unusual for an employee to
 5  buy product from the same manager every time?
 6      A   No.
 7      Q   It could just happen that way?
 8      A   Yes.  Just depends on people's schedule.
 9      Q   But typically it's whatever manager is
10  at the counter is going to be the one that you
11  check out with?
12      A   Yes, or whichever manager is available
13  to do that, yes.
14          MR. JOHNSON:  All right.  Counsel, we
15  can go ahead and take a break there.
16          (Brief recess.)
17  BY MR. JOHNSON:
18      Q   Mr. Spangler, can you take a look at
19  Exhibit 2, please, which I think you have in front
20  of you there.
21      A   Sure, yes.
22      Q   Now, the first 50 pages or so of this

                                              87
 1  exhibit are text messages between you and Jazz
 2  Baker, right?
 3      A   Correct.
 4      Q   And the text in blue is you, the text in
 5  gray is Ms. Baker, right?
 6      A   Yes.
 7      Q   And who is Jazz Baker?
 8      A   She's a friend of mine.
 9      Q   And how do you know Ms. Baker?
10      A   Well, we connected through Facebook in
11  2020 and we just have hung out since then.  I was
12  sharing a lot of the experiences with her that I
13  was going through at the dispensary at the time.
14      Q   And how did you happen to connect
15  through Facebook?  Like were you members of a
16  certain group or...
17      A   No, we just have a lot of mutual
18  friends.
19      Q   Is Jazz Baker her real name?
20      A   Her real name would be Jasmine Baker.
21  She also I think has Selena I think is her
22  official first name.  Selena Jasmine Baker.

                                              88
 1      Q   Can you spell that, if you know how?
 2      A   S-E-L-E-N-A.
 3      Q   And then Jasmine is --
 4      A   Yes.
 5      Q   Can you spell that?
 6      A   J-A-S-M-I-N-E.
 7      Q   Do you know where Ms. Baker lives?
 8      A   Yes.
 9      Q   What is her address, if you know?
10      A   I don't really want to -- I don't have
11  her house number for one, and I would actually
12  prefer that she be kept out of this because she
13  only knows what I've told her and posted what I
14  gave her.
15      Q   So you understand that you're testifying
16  under oath today, right?
17      A   Yes.
18      Q   You need to testify truthfully.
19      A   Yes.
20      Q   And if you refuse to provide Ms. Baker's
21  address, we may have to seek relief from the court
22  on that and it may be resuming a deposition or you
```

**Page 89**

1  being compelled to provide the information.
2  A  Okay.
3  Q  So I'd like you to provide it now.
4  Obviously I'm not your lawyer. I don't represent
5  you. I can't advise you to do or not do anything.
6  A  Yes.
7  Q  But we would like that information if
8  you have it.
9  A  Okay. I don't have a house number for
10 her. I can tell you she lives on East 41st
11 Street.
12 Q  And that's in Baltimore?
13 A  Yes.
14 Q  Do you have Ms. Baker's phone number?
15 A  Yes.
16 Q  Can you provide that. And just let the
17 record reflect the witness is looking at his cell
18 phone.
19 A  301-399-2021.
20 Q  Do you know what Ms. Baker does for a
21 living?
22 A  She's a bartender.

**Page 90**

1  Q  Do you know where she's a bartender?
2  A  Different places.
3  Q  Do you know any of the places that she
4  is a bartender in?
5  A  Yes.
6  Q  Which places is that?
7  A  Mobtown Ballroom and Golden West.
8  Q  Anywhere else?
9  A  Not currently.
10 Q  And are those bars in Baltimore?
11 A  Yes.
12 Q  When was the last time you spoke with
13 Ms. Baker?
14 A  Yesterday.
15 Q  What did the two of you speak about?
16 A  An event that we're organizing.
17 Q  Nothing to do with Ms. Jones or Blair
18 Wellness?
19 A  No.
20 Q  Have you spoken with Ms. Baker about
21 Ms. Jones or Blair Wellness other than what's
22 reflected in these text messages?

**Page 91**

1  A  I told her that I am giving a deposition
2  in the case and we both related to each other that
3  there were attempts to serve us subpoenas.
4  Q  What did Ms. Baker say about the
5  attempts to serve her? She's been a tough woman
6  to get ahold of.
7  A  Yes. She doesn't really want to be
8  pulled into this. Doesn't want to be compelled to
9  have to appear anywhere.
10 Q  Did she say why that is?
11 A  She doesn't really feel like she has
12 anything nice to say about Blair Wellness and also
13 that, you know, she was just trying to do the
14 right thing in raising awareness and passing on
15 the information that I gave her.
16 Q  Did she indicate any willingness to
17 reach out to us and let us know that she's aware
18 of the attempts to serve her or is she avoiding
19 that?
20 A  No, I think she's avoiding that.
21 Q  Avoiding in a sense that she doesn't
22 want --

**Page 92**

1  A  She doesn't want to be a part of it.
2  Q  And she's taking efforts not to be
3  served?
4  A  Yes.
5  Q  So referring back to Exhibit 2, you
6  indicate, one of the first things on here, that
7  you're trying to start a union and you say that
8  it's because the whole industry is super greedy
9  and exploitative. Did I read that correctly?
10 A  Correct.
11 Q  Now, when you say "the whole industry,"
12 what are you referring to?
13 A  I am referring to the medical cannabis
14 industry in Maryland but not exclusively in
15 Maryland.
16 Q  And why do you say "the whole industry
17 is exploitative and greedy"?
18 A  I believe that the core intention is to
19 maximize profit rather than serving the interests
20 of patients or creating a fair and equitable
21 workplace.
22 Q  You think that's a problem that's