# EXHIBIT I



# Planet Depos
We Make It Happen

# Transcript of Kamille D. Jones

**Date:** February 16, 2023
**Case:** Jones -v- Blair Wellness Center, LLC, et al.

**Planet Depos**
**Phone:** 888.433.3767
**Email::** transcripts@planetdepos.com
www.planetdepos.com

```
                                        1
  1         IN THE UNITED STATES DISTRICT COURT
  2            FOR THE DISTRICT OF MARYLAND
  3                 (Northern Division)
  4   ---------------------------x
  5   KAMILLE D. JONES           :
  6         Plaintiff,           :
  7     v.                       : Civil Action No.:
  8   BLAIR WELLNESS CENTER, LLC,: 1:21-cv-02606-ADC
  9   et al.                     :
 10         Defendants           :
 11   ---------------------------x
 12   BLAIR WELLNESS CENTER, LLC,:
 13         Counter-Plaintiffs   :
 14     v.                       :
 15   KAMILLE D. JONES           :
 16         Counter-Defendant    :
 17   ---------------------------x
 18         Deposition of KAMILLE D. JONES
                  Baltimore, Maryland
 19           Thursday, February 16, 2023
                     10:09 A.M. EST
 20   Job No.: 481610
 21   Pages: 1 - 462
 22   Reported by: Dawn M. Hyde, Notary Public
```

```
                                        2
  1       Deposition of KAMILLE D. JONES, held at the
  2   offices of:
  3
  4
  5       NELSON MULLINS RILEY & SCARBOROUGH, LLP
  6       100 South Charles Street, Suite 1600
  7       Baltimore, Maryland 21201
  8
  9
 10       Pursuant to notice, before Dawn M. Hyde,
 11   Notary Public in and for the State of Maryland.
```

```
                                                   3
 1   A P P E A R A N C E S
 2
     ON BEHALF OF THE PLAINTIFF:
 3
       LINDSEY J. PARKER, ESQUIRE
 4
       725 Ponca Street
 5
       Baltimore, Maryland 21224
 6
       (443) 345-8388
 7
 8   ON BEHALF OF THE DEFENDANTS:
 9     JEFFREY T. JOHNSON, ESQUIRE
10     MICHAEL E. BLUMENFELD, ESQUIRE
11     NELSON MULLINS RILEY & SCARBOROUGH, LLP
12     100 South Charles Street, Suite 1600
13     Baltimore, Maryland 21201
14     (443) 392-9402
```

```
                                                       4
 1              C O N T E N T S
 2   EXAMINATION OF KAMILLE D. JONES            PAGE
 3     By Mr. Johnson                             6
 4
 5              E X H I B I T S
 6              (ATTACHED)
 7   JONES DEPOSITION EXHIBITS                  PAGE
 8   Exhibit 1  Letter to Ms. Jones from
                Mr. Blair, 10/9/19                40
 9
     Exhibit 2  Ms. Jones's ATIs                  88
10
     Exhibit 3  Text messages between Ms. Jones
11              and Rainforest                   100
12   Exhibit 4  Text messages between Ms. Jones
                and Taylor                       130
13
     Exhibit 5  E-mail from Mr. Blair to
14              Ms. Jones, 11/5/20               177
15   Exhibit 6  E-mail from Mr. Blair to
                Ms. Jones, 11/4/20               177
16
     Exhibit 7  E-mail from Ms. Jones to
17              Mr. Blair, 11/5/20               187
18   Exhibit 8  Termination for Cause text,
                11/18/20                         267
19
     Exhibit 9  Kamille's transactions           271
20
     Exhibit 10 Virtual Wallet Spend Statement   274
21
     Exhibit 11 POS Spreadsheet                  307
```

### 5

| | EXHIBITS (Cont'd) | PAGE |
|---|---|---|
| | Exhibit 12 Statement of Charges | 329 |
| | Exhibit 13 Petition for Expungement | 331 |
| | Exhibit 14 Text messages between Ms. Kelly and Ms. Jones, 4/7/21 | 335 |
| | Exhibit 15 Text messages between Ms. Jones and Mr. Spangler | 349 |
| | Exhibit 16 Text messages between Ms. Jones and Mr. Spangler, 12/1/20 | 354 |
| | Exhibit 17 Text messages with Mr. Cash and Chelsea | 356 |
| | Exhibit 18 Notice of Benefit Determination | 367 |
| | Exhibit 19 Appeal statement | 368 |
| | Exhibit 20 E-mail from Mr. Blair to Ms. Jones, 6/2/21 | 376 |
| | Exhibit 21 E-mail from Ms. Jones to Mayor Scott, 6/1/21 | 392 |
| | Exhibit 22 Charge of Discrimination | 397 |
| | Exhibit 23 Letter from Mr. Terry Blair to EEOC, 3/10/21 | 400 |
| | Exhibit 24 List of Damages | 433 |
| | Exhibit 25 Text from Ms. Bollero to various, 9/2 | 456 |
| | Exhibit 26 Spreadsheet of products sold | 457 |

### 6

PROCEEDINGS

Whereupon,

KAMILLE D. JONES,

being first duly sworn or affirmed to testify to the truth, the whole truth, and nothing but the truth, was examined and testified as follows:

EXAMINATION BY COUNSEL FOR THE DEFENDANTS

BY MR. JOHNSON:

Q  Good morning, Ms. Jones.

A  Good morning. How are you?

Q  Good. How are you?

A  Very good.

Q  Good. So my name is Jeff Johnson. I represent Matthew Blair, Blair Wellness Center and Blair Management in the lawsuit that you filed in the District of Maryland.

A  Yes.

Q  Have you had your deposition taken before?

A  I've had my deposition taken once before.

Q  You have?

### 7

A  In a separate case, yes.

Q  Okay. So I will be quick with the sort of housekeeping matters and the ground rules as to how this goes.

A  Got it.

Q  So as you know, you know, you're placed under oath. Same penalty of perjury applies as if you were giving testimony in a courtroom except, you know, we are in a conference room because this is for discovery purposes.

A  Got it.

Q  The purpose of the deposition today is to try and get as complete answers as we can to my questions. If anything occurs to you during the deposition that you need to supplement or add an answer or amend an answer, please let me know that so we have your most complete testimony on the record; is that fair?

A  Yes.

Q  If at any point during the deposition you don't understand one of my questions, you didn't hear the question, please let me know and I

### 8

can rephrase it.

A  Got it.

Q  If you do provide an answer to a question, I'm going to assume that you've understood and that your answer is, you know, responsive to my question; is that fair?

A  Yes.

Q  We can take breaks during today's deposition. I think this one is going to go -- it's going to be a longer deposition so don't feel like it's a marathon. If you need to get up, stretch your legs, use the restroom, you know, let me know.

A  Thank you.

Q  The only thing I'll ask is that you do answer any questions that are pending before we take a break; is that fair?

A  Absolutely.

Q  And that you not discuss the substance of your testimony during the break.

A  Absolutely.

Q  One of the things that, you know, the

**13**

1  A  That is my parents' rental property.
2  Q  So your parents rent that property?
3  A  Correct.
4  Q  And who do you live with at that
5  property?
6  A  Both my mother and father, Kevin and
7  Barbara Jones.
8  Q  How long have you lived there?
9  A  I have lived there at this point I would
10 say over ten years.
11 Q  Have you discussed this lawsuit with
12 Kevin Jones?
13 A  My father, yes.
14 Q  What have you discussed with Mr. Jones?
15 A  Well, he has been there throughout the
16 entirety.  He's the person who I would literally
17 come home to and talk about what was going on as
18 it was happening.  So he's my father.  He's my
19 best friend, as well as my mother.  So I tell them
20 everything.  We talk every day.
21 Q  Are you aware that we have been trying
22 to serve Mr. Jones with a subpoena in this

**14**

1  lawsuit?
2  A  I'm familiar, yes.
3  Q  Have you discussed that with Mr. Jones?
4  A  We have had not a particular discussion
5  about it.  I'm aware but with my dad's work
6  schedule, he's a longshoreman so he's up early and
7  then home very, very late.
8      And then my mother tends to my
9  grandmother full time.  She's her caretaker.  So
10 with that being said, my parents are rarely home.
11 And with me working in Capitol Heights and doing
12 all that commuting, yes, we're rarely home.
13 Q  What is Mr. Jones' work schedule as a
14 longshoreman?
15 A  I would say he wakes up between 4:00 and
16 4:30 and sometimes he's back as late as 1:00 or
17 2:00 in the morning sometimes the next day.
18 Q  Is that a 9:00 to 5:00 -- strike that.
19 Is that a Monday through Friday kind of schedule?
20 A  Seven days a week type of guy.  My dad
21 works all the time.  We have to beg him to take
22 some time off.

**15**

1  Q  So he works the hours that you just
2  described seven days per week?
3  A  Well, what I am telling you is a general
4  spectrum of the hours that he works.  I said "as
5  late as," so he could be home as early as 6:00.
6  It depends on what time they call it like busting
7  down.  Like whenever they get those loads
8  completed.
9  Q  Is Mr. Jones aware that we are trying to
10 serve him in this case?
11 A  He is aware, I'm sure.
12 Q  Has he taken efforts to avoid being
13 served in this case?
14 A  No particular efforts to avoid it at
15 all.
16 Q  Has he reached out to the process server
17 to let him know that he's aware that he's trying
18 to be served?
19 A  I don't believe so.
20 Q  Does he have any papers or contact
21 information from the process server?
22 A  There was a business card left that I

**16**

1  saw that he had on the refrigerator.
2  Q  Have you seen the subpoena for him to
3  appear for a deposition?
4  A  I have not seen it, no.
5  Q  If it was given to you, could you pass
6  it on to him?
7  A  I don't really understand what you mean.
8  Pass it off to him.  I wouldn't serve my dad.  I
9  think that's --
10 Q  Well, could you hand him papers?  I am
11 not asking you to serve him.
12 A  I wouldn't hand him anything from you
13 guys.
14 Q  Why not?
15 A  Because it seems like it would be your
16 job to do so.  So it's like I'm just not going
17 to -- I wouldn't do it.
18 Q  Right.  So this is a witness that lives
19 with you, right?
20 A  Yes.
21 Q  He's your father.
22 A  That's right.