IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| KAMILLE D. JONES | * | |
| Plaintiff, | * | Civil Case No: 1:21-cv-02606-ADC |
| vs. | * | |
| BLAIR WELLNESS CENTER, *et al*. | * | |
| Defendants. | * | |
| | * | |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT**

Plaintiff and Counterclaim Defendant Kamille D. Jones, by and through undersigned counsel, hereby opposes the Motion for Summary Judgment filed by Defendants Blair Wellness Center, LLC ("Blair Wellness"), Matthew Blair, and Blair Management, LLC ("Blair Management"). ECF No. 100. The Defendants are not entitled to summary judgment, as material disputes of fact predominate the instant matter and the Defendants have failed to demonstrate their entitlement to judgment as a matter of law. Failing to carry their burden of proof, Defendants' Motion should be dismissed accordingly.

I. INTRODUCTION

Plaintiff has sought for a full year now to clarify the relationships between and amongst each of the three Defendants and the myriad related but undisclosed business entities associated with the cannabis retail operation licensed and located at 5806 York Road in Baltimore, Maryland. At present, the only information on the record concerning any of these entities was either a) excavated out of public records by Plaintiff's counsel,

or b) provided by one Matthew Blair by way of the five-odd Declarations filed in his individual capacity (ECF No.'s 16-1, 24-2, 25-1, 42-1, 57-1, and 100-3), which themselves are supported only by inadmissible, self-serving documentation of questionable authenticity and suspect origin. *See generally*, Attachments to ECF No. 57. To add further confusion, while the Defendants have insisted throughout this action that they are separate entities, they insist on acting in complete synchrony—sharing a single answer, sharing legal representation, sharing contact information, sharing a single document production even though they each received different requests, etc.

Now, Defendants seek to avoid trial by way of summary judgment. However, the Defendants cannot plausibly assert that there are no material facts in dispute without willfully disregarding the sworn testimony of numerous witnesses and the Plaintiff herself, while refusing to respond to the actual allegations underpinning Plaintiff's claims. Neither can the Defendants rely on hearsay riddled throughout their unauthenticated documentary evidence to rewrite the underlying facts for the benefit of the record. In light of the material facts in dispute, Defendants' Motion should be denied.

## II.   STATEMENT OF FACTS

Kamille Jones is a Black woman residing in Baltimore, Maryland. Blair Wellness Center is a medical cannabis dispensary located at 5806 York Road in Baltimore City, Maryland. *See* Amended Complaint, ECF No. 48 at ¶ 8. Matthew Blair is the founder of and resident agent for Blair Wellness Center, which he owned up and until transferring his interest to his spouse, Elvira Torinese Blair, in January 2019. ECF No. 57-1 at ¶ 2-4. Now Matthew Blair is the sole member of Blair Management, LLC, which provides

personnel and staffing services to its "subsidiary, Blair Wellness." *See* Public Statement of Matthew Blair, **Exhibit E** at ¶2. Blair Management leases the 5806 York Road premises from Blair Commercial Properties, LLC (Commercial Lease Agreement, ECF No. 57-3), and Blair Wellness Center operates from the premises pursuant to an Administrative Services Agreement with Blair Management as of January 1, 2018. *See* Administrative Services Agreement Excerpt, ECF 51.2 at ¶2. Also on the premises, adjoining the dispensary is a CBD shop d/b/a Pura Vida. Pura Vida, Blair Wellness, and Blair Management each list a contact phone number of 410-323-0100.

On October 9, 2019, Blair Management extended Ms. Jones an "offer of employment to serve in the capacity of patient consultant at Blair Wellness Center, LLC (BWC)." *See* Employment Offer, ECF No. 43-5 at ¶ 3. On October 15, 2019, Plaintiff filled and submitted a formal job application with Blair Wellness Center, attached hereto as **Exhibit A.** Ms. Jones then entered into a Mutual Non-Disclosure agreement with Blair Wellness Center, LLC, which was duly authorized and executed by "Matt Blair, President." *See* **Exhibit B** at p. 2. After passing her background check to become a dispensary agent (*See* **Exhibit D**) "Ms. Jones began working at Blair Wellness Center on 10/21/2019 as an 'at-will' employee in the role of patient advisor at a rate of $15/hr," **Exhibit F** at ¶ 4. A patient advisor is a public-facing, customer service-focused role, known colloquially as a "budtender."

After several months, Ms. Jones then transferred to a role in the higher-paying inventory department as an auditor, directly reporting to Taylor Ciganek. As Ms. Jones began her new role, it was discovered that the long-standing inventory manager, James

"Jamie" Adcock, was responsible for large discrepancies between the state-required tracking system, METRC, and the dispensary's actual inventory numbers, leaving Blair Wellness with an inventory in disarray, and a surplus of shake that needed to be sold as quickly as possible for the purpose of reconciling their inventory. In early August 2020, Blair Wellness failed a pop-up inspection, at which point Mr. Adcock immediately vacated his position. Taylor Ciganek was then promoted to inventory manager, and Ms. Jones was promoted to assistant inventory manager, and they were instructed to reconcile the inventory as quickly as possible.  Jones Depo 228:1-230:1.

Rainforest "Rain" Bolero was ostensibly the compliance officer for the dispensary. Ms. Bolero has a high school education and no specific training that would qualify her to advise on legal issues. After Ms. Bolero, a white employee, left her paycheck sitting on the copier, Ms. Jones and the other employees discovered that she was earning $21/hour, whereas employees were previously told that $20/hour was the highest wage anyone could earn. Jones Depo, 239:3-132:17. Ms. Jones met with Melissa Beatty, the Clinical Director and Human Resources Officer for Blair Wellness and raised her concerns about possible wage discrimination based on her race. Jones Depo, 133:6-145:22. Maddison Nessel overheard the conversation, which took place in the breakroom while Ms. Nessel was present. Nessel Depo, 61:1-72:18. No investigation into Ms. Jones' complaint was conducted. Rather, Ms. Jones was immediately demoted, then terminated for being disgruntled, then told she was terminated due to overtime violations, before finally being accused of theft along with the only other Black managers. Jones Depo, 253:22-256:9.

In response, Erik Spangler, another dispensary employee, wrote and passed along a discrimination alert, which his friend Jazz posted in a closed Facebook group called Black Cannabis Matters. *See generally*, Spangler Depo. Mr. Blair found out about the post, assumed the alert came from one of his disgruntled Black employees, and immediately retaliated by hiring a PR specialist to draft a statement to distribute across all channels, with the specific intention of ruining Ms. Jones' and her coworkers' reputations. Nessel Depo, 174:1-178:22.

### III.   STANDARD OF REVIEW

a. <u>Rule 56 Motion for Summary Judgment</u>

It is appropriate for the Court to grant summary judgment if the pleadings, discovery materials, and any affidavits before the Court show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a). The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences." *Shin v. Shalala*, 166 F.Supp.2d 373, 375 (D.Md. 2001). Admissible evidence is required to support a motion for summary judgment, and absent such evidence, a motion for summary judgment may be denied even in the absence of a response.

b. <u>McDonnell Douglass Framework</u>

Cases of employment discrimination rarely feature direct evidence of discrimination because people are unlikely to openly admit their biases. In cases alleging

discriminatory treatment or retaliation under Title VII without direct evidence of such, courts apply the McDonnell Douglas burden-shifting analysis. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under this framework, the plaintiff must set forth a prima facie case that: (1) the plaintiff was a member of a protected class or engaged in protected activity; (2) the plaintiff was qualified for the job; (3) the plaintiff suffered an adverse employment action; and (4) the plaintiff was replaced by a person outside the protected class or was treated differently than a similarly situated, non-protected employee. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000). Once the plaintiff establishes a prima facie case, the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions. Once the employer presents evidence of a non-discriminatory reason for the adverse employment action, the plaintiff must show by a preponderance of the evidence that the proffered reasons are a pretext for unlawful discrimination. *Fiero v. CSG Sys., Inc.*, 759 F.3d 874, 878 (8th Cir. 2014).

## IV.   OBJECTIONS TO DEFENDANTS' EVIDENCE

Plaintiff's counsel took great exception to the late-stage Confidentiality Order sought by the Defendants in September 2022, not only because their deadline for responding to Plaintiff's outstanding discovery requests had already lapsed, but because it seemed fairly obvious that the Defendants would use such an order to justify providing even less responsive information than before. *See generally* ECF No. Unfortunately, Plaintiff's counsel was entirely correct in their assumption, and Defendants' "Exhibit B", ECF No. 100.3, presently filed under seal, perfectly illustrates the issue at hand:

Exhibit B is yet another "Declaration of Matthew Blair," this time with twelve attachments. As Mr. Blair has stated previously, ECF No. 42-1 at ¶ 2,

> I am the sole member of Blair Management, LLC ("Blair Management"), a limited liability company formed under the laws of the state of Maryland, and have been so since the formation of Blair Management on December 28, 2017. ECF No. 100.3 at ¶2.

In attempting to narrow the issues, Plaintiff's first Request for Admission asked that Mr. Blair,

> Admit that you are the sole member of Blair Management, LLC ("Blair Management") and have been so since the company was formed on December 28, 2017.  Exh. G-3 at p. 3.

On February 1, 2023, Mr. Blair provided the following Response:

> Defendant objects to this request as unlikely to lead to the discovery of relevant evidence. *Estate of Cederloff v. United States*, No. CIV.A. DKC 08-2863, 2010 WL 157512, at *2 (D. Md. Jan. 13, 2010) (sustaining objections to requests for admissions on the grounds that the requests were "wholly irrelevant"). Rule 36 requires "[e]ach request for admission[] [to] be direct, simple and 'limited to singular relevant facts." *CX Reinsurance Co. Ltd. V. Singer Realty, Inc.*, No. CCB-15-3056, 2018 WL 271984, at *4 (D. Md. Jan. 3, 2018), report and recommendation adopted, No. CV CCB-15-3056, 2018 WL 4863626 (D. Md. Jan. 30, 2018) (citation omitted). Request No. 1 is neither limited to "singular relevant facts" nor calculated to lead to the discovery of relevant evidence, as Mr. Blair's status as the sole member of Blair Management was only raised in connection with Plaintiff's claim that she was formerly employed by Mr. Blair and Blair Wellness Center, LLC ("Blair Wellness") in Counts I and II, which were dismissed by the Court on two separate occasions—most recently with prejudice on September 1, 2022. See ECF No.'s 58 and 59. Given that discovery is necessarily limited to the surviving claims in the parties' pleadings, *Robinson v. Pytlewski*, No. 8:19-CV-1025-DLB, 2022 WL 4095355, at *10 (D. Md. Sept. 7, 2022), Request for Admission No. 1 is an abuse of the discovery process and an ill-disguised attempt by Plaintiff to revive claims which have been twice dismissed by the Court. On the basis of this objection, **Request No. 1 is denied.**

Id. Emphasis supplied.

Such has been Plaintiff's frustration throughout—any question directed to any Defendant at any time is necessarily directed to the wrong party, as Mr. Blair himself will promptly inform you. And now, after all of the misrepresentative, evasive non-answers have allowed the Defendants to effectively run out the twice-extended discovery period, Defendants seek to file their evidence under a shroud of secrecy speciously couched in third-party privacy concerns for which they have no standing to raise. Ultimately, Mr. Blair's Declaration and the materials cited therein fail to properly support the facts as presented, allege facts outside of Mr. Blair's personal knowledge, and rely on inadmissible statements of hearsay. Accordingly, the Court should disregard Mr. Blair's Declaration and deny Defendants' Motion to Seal.

Defendants presently seek to seal all thirteen (13) documents comprising Exhibit B, the majority of which were never designated confidential, and have either already been filed unsealed in the present matter or were otherwise disclosed previously to third parties in connection with this matter.

- Exhibit 1, "Excerpt of Administrative Services Agreement" was filed previously as ECF No. 34-2.
- Exhibit 7, "Plaintiff's Medical Cannabis Purchase Records" are the same files Defendants presented to BCPD and to the Unemployment Insurance office.
- Exhibit 10, "Facebook Messages to Jazz Baker" was filed previously as ECF No. 42-3.
- Exhibit 11, "Blair Wellness Social Media Post" was attached to Plaintiff's Amended Complaint as ECF No. 40-3.

There is no reason, much less a good reason, that Exhibit 8, "February 7, 2020 Email from Matthew Blair," warrants filing under seal, as Defendants could simply redact the email addresses of non-interested parties to the communication. Neither is there any basis for

filing Exhibit 9 under seal. Ultimately, none of the proposed exhibits are entitled to a retroactive confidentiality designation, and many of the exhibits have a cleaner copy readily available for citation already on the record.

As for the admissibility of Mr. Blair's evidentiary proffer, Plaintiff renews her objection to the authenticity and admissibility of the truncated, undated ASA offered as Exhibit 1, which Defendants have repeatedly promised and failed to produce in full.[1] Plaintiff objects to Exhibit 2 as being hearsay inadmissible under any exception. Plaintiff also objects to the authenticity of Exhibit 4, as the final page is impermissibly incomplete. Plaintiff objects to the undated, unauthenticated document of unknown authorship offered as Exhibit 5, "Sales by Month Data," which should be stricken as it was never produced in discovery and the method by which these numbers were calculated remains unclear. Plaintiff objects to Exhibit 6, "October 23, 2020 Email from Matthew Blair" as being irrelevant. Plaintiff was neither a party to this communication, nor has it been alleged that Plaintiff mishandled cash at any point. Likewise, the Declaration of Melissa Beatty (ECF No. 100-6) should be disregarded insofar as it is not based in personal, first-hand knowledge of the facts recited therein. Notably, Melissa Beatty has yet to produce a single statement in discovery that was not written almost entirely in third-person

---

[1] Plaintiff highly suspects that Defendants refuse to produce a signature page because at the time the ASA was executed (January 1, 2018), Mr. Blair was undeniably the owner of both Blair Wellness Center and Blair Management. Mr. Blair was likely the only signatory to the ASA, just as he was the only signatory to the Commercial Lease Agreement between Blair Commercial Properties, LLC and Blair Management (*See* ECF No. 57-3 at p. 16), purportedly executed on August 1, 2017, months before Blair Management's formation on December 28, 2017.

passive voice, heavily indicating her non-involvement with any of the relayed allegations.

V.  ARGUMENT

A.  Summary Judgment is Not Warranted on Count I for Discrimination or Count II for Retaliation, as Material Facts Remain in Dispute, and Defendants are Not Entitled to Judgment as a Matter of Law.

Plaintiff Jones was offered several evolving reasons for her demotion and termination before finally being accused of a theft scheme alongside the only other Black managers at the dispensary. First, Plaintiff was demoted, then immediately terminated for her "attitude." She was then told she was terminated for "violations of overtime policy," before Defendants ultimately settled on entirely unfounded accusations of theft and subjecting them to shame in social media posts. It is clear that no other employees were treated in a remotely similar manner.

Defendants continue to claim that "Ms. Jones and several other Blair Management employees engaged in a calculated scheme of checking each other or themselves out for personal medical cannabis purchases and charging themselves significantly reduced amounts from the established retail cost of cannabis products" ECF No. 60 at ¶ 40. To date, there is no evidence of any "scheme," outside of Mr. Blair's continued insistence on baselessly lumping the Black managers together as thieves and referring to them as "co-conspirators" (ECF No. 48-6 at ¶ 3) well after each of their criminal cases had been dismissed. Defendants produced videos of some four transactions where Ms. Jones purchased discounted products from her closing manager, Chelsea Kelly, while business carries on per usual in the dispensary. Defendants managed to produce one video that

included all three Black managers in the frame at once, however it was still just a transaction between Ms. Kelly and Ms. Jones, while Mr. Cash was merely checking in patients at the front window. This is the full extent of their demonstrated interactions. And while Defendants claim that they have always had incontrovertible evidence of this so-called theft, in their Answer to Plaintiff's Amended Complaint, they still claim to need to conduct a full audit several years later. ECF No. 60 at ¶ 41.

In communicating with the MMCC on November 18, 2020, Mr. Blair specifically stated he had no evidence of diversion, though he promised an audit would be conducted by November 22, 2020 after close of business. Yet instead, the very next day Mr. Blair called the police. Taylor Ciganek was assistant inventory manager when Blair Wellness Center was cited for COMAR violations in August 2020 (*See*, Exhibit I), as well as the full inventory manager when Blair Wellness was cited for diversion the same time the following year. *See,* Exhibit J. Ms. Ciganek is herself named in the 2021 report as having made several concerning METRC entries, while more than nine-hundred (900) grams of flower were unaccounted for since December 21, 2020. And still Defendants managed to find a way to work Plaintiff's name into their response, in attempting to blame her for a single missing one-gram cartridge. *See*, Exhibit J, Response. Despite grave inventory problems existing and persisting beyond Ms. Jones' brief tenure as assistant inventory manager, the fixation remains unjustifiably on Ms. Jones for reasons yet unknown. One has to wonder how a dispensary that cannot find pounds of cannabis finds the sudden ability to conduct quick, accurate audits, but only for Black people. It gives deflection, pretext, and above all it gives retaliation. The idea that Defendants claim that there are

no material facts in dispute in the instant matter, when virtually every material fact remains highly disputed, almost reads as satire. Plaintiff Jones has shown a prima facie case of retaliation, and ultimately, arguments are not evidence. Evidence is evidence.

**B.     This Court has Already Determined that Plaintiff's Claims Against Blair Management are not Time-Barred.**

While Defendants raised this argument in opposing Plaintiff's Motion for Leave to Amend her Complaint (ECF No. 43), this Court found Plaintiff's claims related back in granting Plaintiff's Motion for Leave to Amend her Complaint and joining Blair Management as a Defendant. ECF No. 47. Defendants raised the argument again in their subsequent Motion to Dismiss or in the Alternative, Motion for Summary Judgment of Plaintiff's Amended Complaint (ECF No.  51), and again, the Court dismissed the argument. ECF No. 58. It is presently unclear why Defendants continually raise this long-settled argument, as the issue is not in contention.

**VI.     CONCLUSION**

Defendants have failed to support their motion with admissible evidence, and are not entitled to summary judgment. Accusations of theft are defamatory per se. And any release effected by Plaintiff withdrawing her malicious prosecution claim has no effect on the remaining counts against the Defendants. *Pantazes v. Pantazes*, 77 Md. App. 712, 724, 551 A.2d 916, 922 (1989) (The release of potential defendants to the malicious prosecution had no effect on the prior defamation.)

**WHEREFORE**, for all the reasons set forth in this Opposition and related attachments, Plaintiff Jones humbly requests this Court deny Defendants' Motion for

Summary Judgment on all counts and grant such other and further relief as deemed necessary and appropriate.

Respectfully Submitted,

/s/Lindsey Parker
Lindsey J. Parker (Bar No. 21776)
725 Ponca Street
Baltimore, MD 21224
(443) 345-8388 *direct*
(443) 335-8258 *fax*
Lindsey.parker@pm.me
*Attorney for Plaintiff*

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that pursuant to the Federal Rules of Civil Procedure and the Local Rules of the United States District Court for the District of Maryland, on Sunday, April 2, 2023 a copy of the foregoing Opposition was electronically filed via CM/ECF and served on all counsel of record.

Respectfully Submitted,

/s/ Lindsey Parker
Lindsey J. Parker