IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| KAMILLE D. JONES, | * | |
| | * | |
| Plaintiff/Counterclaim Defendant, | * | |
| | * | |
| vs. | * | Civil Action No. ADC-21-2606 |
| | * | |
| BLAIR WELLNESS CENTER, LLC et al., | * | |
| | * | |
| Defendants/Counterclaim Plaintiffs. | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Defendants/Counter-Plaintiffs Blair Wellness Center, LLC ("Blair Wellness Center"), Blair Management, LLC ("Blair Management"), and Matthew Edward Blair (collectively, "Defendants") move this Court for summary judgment on the counts remaining in Plaintiff/Counter-Defendant Kamille D. Jones's ("Plaintiff") First Amended Complaint.[1] ECF Nos. 48, 100. Defendants also move to strike Plaintiff's Response and to seal exhibit B to their Motion for Summary Judgment. ECF Nos. 102, 107. After considering Defendants' Motions and the responses thereto (ECF Nos. 100, 102, 105, 106, 107), the Court finds that no hearing is necessary. Loc.R. 105.6 (D.Md. 2021). For the reasons stated herein, Defendants' Motion for Summary Judgment is GRANTED; Defendants' Motion to Strike is GRANTED; and Defendants' Motion to Seal is GRANTED in part and DENIED in part.

---

[1] On October 12, 2021, this case was assigned to United States Magistrate Judge A. David Copperthite for all proceedings in accordance with Standing Order 2019-07. ECF No. 2. All parties voluntarily consented in accordance with 28 U.S.C. § 636(c). ECF Nos. 21, 54.

## FACTUAL BACKGROUND

Plaintiff is a Black woman who worked for Blair Management at Blair Wellness Center, a medical cannabis retail business in Baltimore City, Maryland. ECF No. 100-5 at 117, 131. She was hired as a "patient consultant," in October 2019 and in March 2020 was voluntarily transferred to the "back-of-the-house" where she served as an Auditor in the Inventory Department. ECF No. 101 at 3. When Plaintiff joined the Inventory Department, she was supervised by James Adcock (Inventory Manager) and Taylor Ciganek (Assistant Inventory Manager). ECF No. 100-5 at 25-26. Mr. Adcock, however, resigned in August 2020 shortly after the business failed an inspection and was cited by the Maryland Medical Cannabis Commission. ECF Nos. 100-5 at 29-30; 101 at 4. Mr. Blair, who oversaw Blair Management and the day-to-day operations of Blair Wellness Center, subsequently promoted Ms. Ciganek to Inventory Manager and Plaintiff to Assistant Inventory Manager. ECF No. 100-5 at 32-34. As the Assistant Inventory Manager, Plaintiff reported directly to Ms. Ciganek and was responsible for organizing and accounting for the cannabis inventory, updating the point-of-sale system, and packaging and labeling products for sale to patients. ECF No. 101 at 5. Plaintiff was compensated at a rate of $20/per hour and received certain medical benefits. ECF Nos. 100-5 at 34; 101 at 5.

While Plaintiff was employed as the Assistant Inventory Manager, Rainforest Bolero, a white female, also worked in the back-of-the-house as the Compliance Officer. ECF No. 100-5 at 35-38. In this role, Ms. Bolero reported directly to Mr. Blair and was responsible for keeping up with Maryland's cannabis regulations as well as educating staff members on different compliance standards. ECF No. 100-7 at 7-10. At some point after Plaintiff was promoted, another Blair Wellness employee, Kendall Cash, texted Plaintiff a picture of Ms. Bolero's paystub, which was accidentally left in an employee breakroom. ECF Nos. 100-5 at 38; 100-7 at 11-12. Plaintiff was

2

upset by the paystub as it revealed that Ms. Bolero was earning $21/hour which was a higher wage than Plaintiff was earning. ECF Nos. 100-5 at 38, 101 at 5-6.

After learning of Ms. Bolero's higher wage, Plaintiff met with Melissa Beatty, the Clinical Director and Human Resources Representative at Blair Management, to express that she and the other managers of color were upset about their current compensation. ECF No. 100-5 at 42-43. Plaintiff expressed to Ms. Beatty that she and her coworkers felt that they were experiencing "wage discrimination." *Id.* at 45. Ms. Beatty and Plaintiff agreed that Plaintiff could raise these concerns with Mr. Blair during her 90-day review. *Id.* at 44. Plaintiff was, however, never able to address these issues as her employment at Blair Management ended prior to her 90-day review. ECF No. 101 at 5.

On November 4, 2020, Mr. Blair emailed Plaintiff explaining that, because of the economic downturn caused by the COVID-19 pandemic, the Assistant Inventory Manager position at Blair Management was being eliminated. ECF No. 100-5 at 120. He did, however, offer Plaintiff the position of Assistant Dispensary Manager at a rate of $17/hour plus tips. *Id.* This role, Mr. Blair wrote, would offer Plaintiff "the opportunity to earn as much or more than [her] previous position." *Id.* Plaintiff reluctantly accepted the position via email the following day. ECF No. 100-5 at 121. In her acceptance email, Plaintiff expressed that, in her view, the timing of the company reorganization seemed "extremely coincidental" given that she recently completed "much of the work" in inventory. *Id.* She also conveyed concerns that the Inventory Department had "put in the most hours" but was not eligible for certain privileges while the front-of-the-house managers got more privileges despite not being "capable of basic functions." *Id.* She concluded by noting that she "truly feel[s] unappreciated and undervalued" and that her "work has been taken for granted." *Id.* at 121-22.

3

After receiving Plaintiff's email, Mr. Blair rescinded his earlier offer of employment because Plaintiff had "displayed an attitude" which made him believe that she would "not be able to carry on the responsibilities of the new position offered" in "the manner expected." *Id.* at 119. Mr. Blair also explained that he had "quite different views on many of the issues" Plaintiff raised, including her accusation that the timing of the company reorganization was "suspicious." *Id.* The reorganization was necessary, he recounted, due to a steady sales downturn and expense increase which he attributed "in no small part" to "an abuse of overtime compensation benefits." *Id.* And, Mr. Blair conveyed that Plaintiff's role was "not the only job position eliminated." *Id.* Plaintiff later learned that Ms. Bolero's position as Compliance Manager was also contemporaneously eliminated. ECF No. 100-5 at 61.

After Plaintiff's offer of employment was revoked, Mr. Blair and Blair Management offered her a severance package to "ease her transition." *Id.* at 136; ECF No. 101 at 8. This package was, however, revoked before Plaintiff accepted it after an internal audit led Mr. Blair to believe that Plaintiff and two other Black employees had improperly inflated the employee discount to purchase thousands of dollars' worth of cannabis products for a fraction of the retail price. ECF No. 101 at 8. While Plaintiff does not dispute that she purchased cannabis products for approximately 10% to 15% of their listed value, she asserts that "managers had the ability to discount product and that they did that frequently." ECF No. 100-5 at 83.

Following the audit, Mr. Blair informed the Maryland Medical Cannabis Commission of the "suspected diversion" and "financial loss." ECF No. 101 at 10. On the advice of Louis Hendricks, a Maryland Medical Cannabis Commission Inspector, Mr. Blair referred the matter to the Baltimore Police Department. ECF No. 101 at 10, 48. Plaintiff and her coworkers were charged

4

with theft and theft scheme. ECF No. 100-5 at 123. The charges were eventually entered *nolle prosequi*." *Id.*

After criminal charges were filed, Erik Spangler, a coworker and friend of Plaintiff, drafted a "discrimination alert" alleging that Blair Wellness had fired three Black managers "without warning, without a grievance process, and . . . without just cause." *Id.* at 100-5 at 127. Mr. Spangler also wrote that Mr. Blair had tried to divert "unionization effort[s]" at Blair Wellness and was now "firing employees who have voiced dissent." *Id.* To remain anonymous, Mr. Spangler distributed the alert to Jazz Baker who, at Mr. Spangler's direction, posted it in several closed online cannabis forums. ECF Nos. 100-5 at 104; 100-8 at 6-7.

Mr. Blair subsequently contacted Ms. Baker and informed her that unionization has never been raised as an issue at Blair Wellness and that all three of the Black managers were terminated from the business "for cause." ECF No. 101 at 49. He also provided Ms. Baker with the criminal case numbers for the employees and explained that all relevant "facts pertaining to these terminations can be determined by consulting the criminal justice system in Baltimore City." *Id.* Ms. Baker responded that she had "no desire or intention to engage in dialogue" with Mr. Blair. *Id.* at 50. Mr. Blair also sent a private email to Noelle Freitas, a former employee of Blair Management, responding to her concerns regarding "the circumstances surrounding the termination" of Plaintiff and her coworkers. *Id.* at 52. He explained that, based on the evidence submitted to the Baltimore Police Department, "the State has determined to take action." *Id.*

After his private messages to Jazz Baker and Noelle Freitas were unsuccessful, Mr. Blair hired a communications firm to draft and disseminate a statement rebutting the discrimination alert. ECF No. 101 at 11, 51. Among other things, the statement explained that "several long-term employees were engaged in misappropriating medical cannabis inventory" and that "[i]t is highly

probable that one or more of these former employees who now face legal consequences may use social media and other methods to create a different narrative." *Id.* at 51. The statement did not, however, specifically name Plaintiff or her other terminated colleagues, nor did it provide the case numbers associated with their then pending criminal cases. *Id.*

## PROCEDURAL BACKGROUND

Plaintiff filed the instant action in this Court on October 12, 2021. ECF No. 1. She filed an Amended Complaint on July 14, 2022, which asserted counts of race discrimination and retaliation in violation of Title VII (Counts I, II), malicious prosecution (Count III), and defamation (Count IV). ECF No. 48. On June 2, 2022, Defendants Blair Wellness Center and Mr. Blair filed a counter-complaint against Plaintiff asserting claims of malicious use of process (Count I), defamation (Count II), and trover and conversion (Count III). ECF No. 38. On July 28, 2022, Defendants moved for dismissal of, or in the alterative summary judgment on, Plaintiff's Amended Complaint. ECF No. 51. On September 1, 2022, Defendants' motion, construed as a motion to dismiss, was granted in part and denied in part. ECF Nos. 58, 59. This Court dismissed Counts I and II as to Blair Wellness and Mr. Blair after finding that neither party was an "employer" under Title VII but denied Defendants' arguments as to Blair Management. ECF No. 58 at 12, 13, 18.

On October 7, 2022, Plaintiff moved to dismiss Defendants Counter-Complaint. ECF No. 64-1. Defendants responded in opposition on October 21, 2022. ECF No. 66. They argued, among other things, that Plaintiff's motion to dismiss was not timely, as it was filed one day after the Federal Rule of Civil Procedure 12(a)(1)(B) deadline. *Id.* at 4. On December 5, 2022, this Court issued an Order directing Plaintiff to respond to Defendants' timeliness argument within 14 days. ECF No. 76. Plaintiff failed to comply with the Order and on December 21, 2022, this Court denied her motion to dismiss. ECF No. 83.

6

On March 17, 2023, Defendants filed a Motion for Summary Judgment. ECF No. 100. Defendants contemporaneously filed a Motion to Seal exhibit B of their Motion for Summary Judgment. ECF No. 102. Plaintiff responded in opposition to both of Defendants' Motions on April 3, 2023. ECF No. 105. Defendants replied on April 17, 2023. ECF No. 107.

## DISCUSSION

### Standard of Review

Pursuant to Rule 56, a movant is entitled to summary judgment where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact. Fed.R.Civ.P. 56(a). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) ("[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." (emphasis in original)). An issue of fact is material if, under the substantive law of the case, resolution of the factual dispute could affect the outcome. *Anderson*, 477 U.S. at 248. There is a genuine issue as to material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id. See Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012). On the other hand, if after the Court has drawn all reasonable inferences in favor of the nonmoving party and "the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50 (citations omitted).

The party seeking summary judgment bears the initial burden of establishing either that no genuine issue of material fact exists or that a material fact essential to the non-movant's claim is absent. *Celotex Corp.*, 477 U.S. at 322–24. Once the movant has met its burden, the onus is on the non-movant to establish that there is a genuine issue of material fact. *Matsushita Elec. Indus. Co.*

7

*v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In order to meet this burden, the non-movant "may not rest upon the mere allegations or denials of [its] pleadings," but must instead "set forth specific facts showing that there is a genuine issue for trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (quoting Fed.R.Civ.P. 56(e)).

**Defendants' Motion to Strike**

The Court begins its discussion in this case in an unusual place—Defendants' Reply. ECF No. 107. In their reply, Defendants assert that Plaintiff's response in opposition to their Motion for Summary Judgment "should be stricken as untimely, and Defendants' Motion should be granted as unopposed." *Id.* at 2. Defendants are—once again—correct that Plaintiff has failed to timely respond to their Motion for Summary Judgment. Under the Local Rules of this Court, "all memoranda in opposition to a motion shall be filed within fourteen (14) days of the service of the motion[.]" Loc.R. 105.2 (D.Md. 2021). Here, Defendants filed their Motion for Summary Judgment on March 17, 2023, making Plaintiff's Response due on March 31, 2023. ECF No. 100. Despite this deadline, Plaintiff did not file her response until April 3, 2023. ECF No. 105. She did not seek an extension, nor explain the delay. *See* Fed.R.Civ.P. 6(b) (A court may extend time "on motion made after the time has expired if the party failed to act because of excusable neglect.").

Having established that Plaintiff's filing was untimely, the Court must determine the appropriate remedy. "Local Rule 105.2(a) does not provide the consequence for a failure to meet the prescribed deadline. Thus, the district court, in its discretion, may decide whether to consider an untimely opposition." *Curtis v. Evans*, No. DKC-2003-2774, 2004 WL 1175227, at * 1 (D.Md. May 27, 2004) (citing *H&W Fresh Seafoods, Inc. v. Schulman*, 200 F.R.D. 248, 252 (D.Md. 2000), *aff'd*, 30 F'App'x 75 (4th Cir. 2002)). Here, in what has become a pattern in this litigation, Plaintiff has missed a deadline and has not, in any way, attempted to justify the delay. *See* ECF Nos. 76 (directing Plaintiff to respond to Defendants' timeliness argument), 83 ("Plaintiff failed to timely

file her Motion and subsequently failed to comply with this Courts Order[.]"); 89 ("Plaintiff has

failed to file any response."). In this Court, "deadlines are not mere suggestions or guideposts."

*Metts v. Airtran Airways, Inc.*, No. DKC-10-466, 2010 WL 4183020, at \*6 (D.Md. Oct. 22, 2010).

Because Plaintiff has consistently defied the Court's deadlines in this case with no explanation,

the Court will exercise its discretion and will grant Defendants' Motion to Strike Plaintiff's

Response and the exhibits attached thereto, ECF Nos. 105, 106.

**Defendants' Motion for Summary Judgment**

Because Plaintiff's Response has been stricken, Defendants' Motion for Summary

Judgment is unopposed. ECF No. 100. However, even when a motion for summary judgment is

unopposed, a district court "must review the motion . . . and determine from what it has before it

whether the moving party is entitled to summary judgment as a matter of law." *Robinson v. Wix*

*Filtration Corp. LLC*, 599 F.3d 403, 409 n.8 (4th Cir. 2010) (emphasis omitted) (quoting *Custer*

*v. Pan Am. Life Ins. Co.*, 12 F.3d 410, 416 (4th Cir. 1993)). "Although the failure of a party to

respond to a summary judgment motion may leave uncontroverted those facts established by the

motion, the moving party must still show that the uncontroverted facts entitle the party to 'a

judgment as a matter of law.'" *Custer*, 12 F.3d at 416.

Plaintiff's Amended Complaint and the Relation-Back Doctrine

Defendants argue that Plaintiff's claims against Blair Management are time-barred because

her Amended Complaint, which added Blair Management as a party, was filed outside of the

applicable limitations periods and cannot relate back to the filing of her original Complaint. ECF

No. 100-1 at 18-21. Federal Rule of Civil Procedure 15(c) allows for the relation back of an

amendment that "changes the party or the naming of the party against whom a claim is asserted"

if the following three conditions are met:

9

(1) "the claim in the amended complaint arose out of the same transaction that
formed the basis of the claim in the original complaint";

(2) "the party to be brought in by the amendment received notice of the action such
that it will not be prejudiced in maintaining a defense to the claim"; and

(3) "it should have known that it would have originally been named a defendant
'but for a mistake concerning the identity of the proper party.'"

*Goodman v. Praxair, Inc.*, 494 F.3d 458, 467 (4th Cir. 2007) (en banc) (quoting Fed.R.Civ.P

15(c)). The United States Court of Appeals for the Fourth Circuit has explained that that "Rule

15(c) must be understood to freely permit amendment of pleadings and their relation-back so long

as the policies of statutes of limitations have been effectively served." *Id.* at 468. These policies

are effectively served "by requiring that a new party have had adequate notice within the

limitations period and by assuring that the new party not be prejudiced by the passage of time

between the original pleading and the amended pleading." *Id.*

### *Adding vs. Changing Parties*

As a threshold issue, Defendants argue that Plaintiff cannot trigger Federal Rule of Civil

Procedure 15(c) as she did not "change the naming" of a party in her Amended Complaint but,

instead, impermissibly "added" an additional party. ECF No. 100-1 at 20. The United States Court

of Appeals for the Fourth Circuit has, however, rejected such a restrictive reading of the word

"changes" in Rule 15(c) and has held that the Rule does not "force the amending party to drop a

defendant for each defendant [she] adds." *Goodman*, 494 F.3d at 469. Applying a more expansive

reading of the word "changes," the Fourth Circuit, in *Goodman v. Praxair, Inc.*, held that the

naming of a new party—even without the removal of a prior party—"'change[s] the party or the

naming of the party against whom a claim is asserted,' as is required by Rule 15(c)(3)." *Id.* at 469.

Here, Plaintiff added a new party (Blair Management) when she filed her Amended

Complaint but did not remove any earlier named parties (Blair Wellness or Mr. Blair). ECF Nos.

1, 48. Under the *Goodman* Court's inclusive reading of the word "change," the addition of Blair Management to the Amended Complaint "change[d] the party or the naming of the party against whom a claim is asserted" and therefore satisfied Rule 15(c)(1)(C). Accordingly, the Court finds that summary judgment is not warranted on this ground.

*"Mistake" Under Rule 15(c)(1)(C)(ii)*

Defendants also contend that Plaintiff cannot satisfy the third prong of the relation back test as "no reasonable finder of fact could conclude that Plaintiff's omission of Blair Management from her Original Complaint was the result of mistake in identity." ECF No. 100-1 at 20. When resolving issues of mistake under Rule 15(c)(1)(C)(ii) "the question . . . is not whether [the plaintiff] knew or should have known the identity of . . . the proper defendant, but whether [the proper defendant] knew or should have known that it would have been named as a defendant but for an error." *Krupski v. Costa Crociere S.p.A*, 560 U.S. 538, 548 (2010). "The reasonableness of the mistake is not itself at issue." *Id.* at 549. Rather, a court focuses its inquiry on "the defendant's understanding of whether the plaintiff made a mistake[,]" which encompasses every type of mistake, including "[a]n error, misconception, or misunderstanding[.]" *Id.* at 548 (internal quotation marks omitted) (alterations in original) (quoting *Mistake*, Black's Law Dictionary (9th ed. 2009)).

In *Krupski v. Costa Crociere S.p.A*, the Supreme Court of the United States struck down the same argument advanced by Defendants here. 560 U.S. 538 (2010). There, the Court rejected the defendants' argument that "the key issue under Rule 15(c)(1)(C)(ii) is whether the plaintiff made a deliberate choice to sue one party over another." *Id.* at 549. The Court reiterated that the Rule 15(c) inquiry "asks what the prospective *defendant* knew or should have known . . . , not what the *plaintiff* knew or should have known at the time of filing her original complaint." *Id.* at

548. The Court recognized that a plaintiff might "mistakenly choose to sue a different defendant based on [a] misimpression" but that this sort of "deliberate but mistaken choice does not foreclose a finding that Rule 15(c)(1)(C)(ii) has been satisfied." *Id.* at 549; *see also Goodman*, 494 F.3d at 473 (Rule 15's emphasis is "on notice, rather than on the type of 'mistake' that has occurred").

As in *Krupski* and *Goodman*, here, the Court declines to wade into the reasonableness of Plaintiff's mistake in naming Blair Wellness and not Blair Management in her Original Complaint. ECF No. 1. The Court will, instead, focus its attention on whether Blair Management should have known it was a proper defendant in the action and whether it had notice of Plaintiff's claims during the Rule 4(m) period. The Fourth Circuit has held that "[n]otice may be presumed when the nature of the claims is apparent in the initial pleading and the added defendant has either a sufficient identity of interest with the original defendant or received formal or informal notice of the claim." *W. Contracting Corp. v. Bechtel Corp.*, 885 F.2d 1196, 1201 (4th Cir. 1989). "Courts have imputed notice to a new defendant who shared the same attorney as the originally named defendants where the defendants bore a sufficient 'identity of interest' and the descriptions in the complaint made clear to the defendants whom the plaintiff intended to sue." *Taylor v. MGM Resorts Int'l, LLC*, No. DKC-21-3192, 2023 WL 2894950, at *2 (D.Md. April 11, 2023) (citing *Goodman*, 494 F.3d at 474-75).

Here, Blair Management does not contest that it had notice of Plaintiff's action during the Rule 4(m) period. And, given the extremely close relationship it had with the previously named Defendants, the Court finds that it knew or should have known it was a proper party to Plaintiff's action. ECF No. 100-1 at 20-21. The evidence attached to Defendants' Motion for Summary Judgment demonstrates that Blair Management shares the same attorney as Mr. Blair and Blair Wellness, and that its interest as a defendant are aligned with Mr. Blair, who is the sole member

12

of Blair Management. ECF No. 101 at 2. Therefore, Blair Management has failed to prove as a matter of law that it did not timely receive notice of Plaintiff's claims. The Court also finds that Blair Management suffered, at most, minimal prejudice as a result of being added in Plaintiff's Amended Complaint as Mr. Blair was able to adequately represent its interest, which are aligned with his own. *See Taylor*, 2023 WL 2894950, at *3. Summary judgment on this ground is, therefore, not appropriate.

Plaintiff's General Release

Defendants next argue that Plaintiff waived her discrimination, retaliation, and defamation claims when she signed a "General Waiver and Release" as part of her petition to expunge the theft and theft scheme charges that arose shortly after she was terminated from Blair Management. ECF No. 100-1 at 21-23. Under Maryland Code, Criminal Procedure Article, § 10-105(a)(4), "[a] person who has been charged with the commission of a crime . . . may file a petition listing relevant facts for expungement of a police record, court record, or other record maintained by the State or a political subdivision of the State if . . . a nolle prosequi . . . is entered." However, such a petition "may not be filed within 3 years after the disposition, unless the petitioner files with the petition a written general waiver and release of all the petitioner's tort claims arising from the charge." *Id.* at (c)(1). Under Maryland law, "a general release—a release aimed at 'all mankind'—bars all future claims against all other entities associated with the events that gave rise to a particular lawsuit." *Jacobs v. Venali, Inc.*, 596 F.Supp.2d 906, 911 (D.Md. 2009). *See also Va. Impression Prods. Co., Inc. v. SCM Corp.*, 448 F.2d 262, 265 (4th Cir. 1971) ("A general release . . . not only settles enumerated specific differences, but claims 'of every kind or character, known and unknown.'").

13

Initially, the Court notes that Plaintiff's "general release" executed under Criminal
Procedure Article, § 10-105(a)(4) is not a true general release as it only releases "all of the
petitioner's *tort claims* arising from the charge." (Emphasis added). Here, Plaintiff has asserted
several non-tort claims, i.e., her Title VII discrimination and retaliation claims. *See Roberts v.
Office of the Sheriff for Charles Cnty.*, No. DKC-10-3359, 2012 WL 12762, at *11 (D.Md. Jan. 3,
2012) ("[E]mployment discrimination is not a tort."); *Bozarth v. Md. Dep't of Educ.*, No. DLB-
19-3615, 2021 WL 1225448, at *7 (D.Md. March 31, 2021) ("Neither of [the plaintiff's] causes
of actions . . . relate to torts. The claims the State challenges here relate only to federal employment
law."). Because Plaintiff's Title VII claims are not torts, the Court finds that they fall outside the
reach of Plaintiff's expungement waiver.

The language of Plaintiff's executed release also makes clear that it only releases claims
arising from her "arrest, detention, or confinement." *Id.* While Plaintiff has, throughout this
litigation, asserted that Defendants wrongfully accused her of theft, she has not asserted any
wrongdoing as it relates to her actual arrest and prosecution. In fact, all of Plaintiff's claims are
grounded in incidents that occurred before or after she was arrested. ECF No. 48. Plaintiff's signed
release further fails to "release and forever discharge" any of the Defendants in this case. ECF No.
100-5 at 124. Instead, the waiver "release[s] and forever discharge[s] Kevin Thomas, the Baltimore
Police Department, and all BPD officers, agents, and employees." *Id.* Because it is not clear that
any of Plaintiff's claims arise from her arrest or that Defendants are covered by her release, the
Court finds that Defendants have failed to prove, as a matter of law, that Plaintiff released her tort
claims against them for malicious prosecution and defamation.

Plaintiff's Disparate Treatment Discrimination Claim

Defendants next contend that Plaintiff cannot make out a prima facia case of discrimination under Title VII and, even if she could, that she cannot rebut Blair Management's legitimate business reasons for her termination. ECF No. 100-1 at 23-28. To survive summary judgment, Plaintiff must raise a dispute of material fact as to whether she was demoted, and later terminated, because of her race. *Robinson v. Priority Auto. Huntersville, Inc.*, --F.4th--, 2023 WL 4009506, at *4 (4th Cir. June 15, 2023). Because there is no direct evidence of employment discrimination before the Court, Plaintiff must use the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), "to develop an inferential case of discriminatory intent." *Lyons v. City of Alexandria*, 35 F.4th 285, 289 (4th Cir. 2022).

"The *McDonnell Douglas* framework has three steps." *Id.* at 289. A plaintiff must first establish a prima facia case of discrimination. *McDonnell Douglas Corp.*, 411 U.S. at 802. If such a showing is made, then the burden shifts to the employer to articulate a legitimate nondiscriminatory reason for the adverse employment decision. *Id.* And, finally, if the employer makes this showing, the burden shifts back to the plaintiff to show that the employer's proffered legitimate, nondiscriminatory reason is a pretext. *Id.* at 804.

To establish a prima facia case of disparate treatment, a plaintiff must show: (1) membership in a protected class; (2) adverse employment action; (3) satisfactory job performance; and (4) that similarly situated employees outside the protected class received more favorable treatment. *McLeod v. Pleasants Constr.*, No. CCB-21-2202, 2023 WL 3569819, at *3 (D.Md. May 19, 2023) (citing *Cepada v. Bd. of Educ. of Balt. Cnty.*, 814 F.Supp.2d 500, 510 (D.Md. 2011)). "The failure to demonstrate one of these required elements is fatal to a plaintiff's ability to establish

a prima facie case." *Sewell v. Mayorkas*, LKG-21-126, 2022 WL 874939, at *1 (D.Md. Mar. 24, 2022).

*The Prima Facie Case—Similarly Situated Comparators*

Defendants in the instant case assert that Plaintiff cannot satisfy the fourth element of a prima facie case as she has not identified any "similarly situated" employees who received "more favorable treatment." ECF No. 100-1 at 23-28. Employees are similarly situated when they are "similar in all relevant respects to their comparator." *Haywood v. Locke*, 387 F.App'x 355, 359 (4th Cir. 2010). "Such a showing would include evidence that the employees 'dealt with the same supervisor, [were] subject to the same standards and . . . engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.'" *Id.* (quoting *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992)). "A supervisor and his subordinates are, by definition, not alike in qualifications." *Popo v. Giant Foods, LLC*, 675 F.Supp.2d 583, 589 (D.Md. 2009).

Here, the Court is able to surmise from the evidence before it that Plaintiff has identified three white comparators, Mr. James Adcock, Ms. Taylor Ciganek, and Ms. Rainforest Bolero. ECF No. 100-1 at 24. She alleges that these employees received more favorable treatment than she did as they were not terminated and subsequently prosecuted for theft. However, for the reasons described below, the Court finds that none of these employees are similarly situated to Plaintiff.

The Court begins its discussion with Mr. Adcock and Ms. Ciganek. During Plaintiff's tenure as an Auditor and Assistant Inventory Manager, she reported directly to and was supervised by the Inventory Manager, first Mr. Adcock and then Ms. Ciganek. ECF No. 100-5 at 28, 67-68. Plaintiff asserts that she is similarly situated to these employees because, at some point, she began performing *some* of the duties of the Inventory Manager. *Id.* at 67-68. While Plaintiff may have

16

taken on some tasks assigned to the Inventory Manager, she testified in her deposition that she "was never the inventory manager," that she was supervised by the Inventory Manager for "the duration of [her] employment," and that she was claiming that she was discriminated against because she did not "receive the same compensation structure as the [people] who supervised [her]." *Id.* at 67-68. The case law in this Court is clear that subordinates are not "similarly situated" to their supervisors. *See Trusty v. Maryland*, 28 Fed.App'x 327, 329 (4th Cir. 2002) (plaintiff and her subordinates were not "similarly situated"); *Oguezuonu v. Genesis Health Ventures, Inc.*, 415 F.Supp.2d 577, 584-85 (D.Md. 2005) ("[B]y definition, [the plaintiff's] subordinates are not 'similarly situated' employees"). Accordingly, I find that Mr. Adcock and Ms. Ciganek are not proper comparators.

Plaintiff also asserts that she was similarly situated to Ms. Bolero, the dispensary's Compliance Officer. However, the evidence before the Court shows that Plaintiff and Ms. Bolero worked in different departments, performed different tasks, and had different supervisors. In her role, Ms. Bolero reported directly to Mr. Blair and was responsible for keeping "up with the changing regulations" and educating the staff on "different parts of compliance." ECF Nos. 100-5 at 39; 100-6 at 3; 100-7 at 7-8. Plaintiff, on the other hand, reported to the Inventory Manager (Mr. Adcock and then Ms. Ciganek) and was responsible for organizing, packing, and auditing cannabis inventory. ECF No. 101 at 5. When asked to compare Plaintiff's role and Ms. Bolero's role, the dispensary's Clinical Director, Melissa Beatty, stated that the Assistant Inventory Manager does not perform "any of [the] functions" of the Compliance Officer. ECF No. 100-6 at 3. Accordingly, given the extensive differences between Plaintiff's position and Ms. Bolero's position, the Court agrees with Defendants that Ms. Bolero is not similarly situated. *See Haywood*, 387 Fed.Appx. at

359 ("[W]e agree with the district court that the named comparator was actually quite dissimilar to the [plaintiffs].").

Even if Mr. Adcock, Ms. Ciganek, or Ms. Bolero did have positions at Blair Management that resembled Plaintiff's Assistant Inventory Manager role, the Court would still find that they are insufficient comparators as Plaintiff has failed to allege that any of these employees engaged in the same or similar conduct as Plaintiff. Here, Plaintiff has not proffered evidence demonstrating that any of these employees purchased cannabis products at a 90-95% employee discount or that they sent an email to Mr. Blair lodging serious accusations against the business. *See* ECF No. 100-5 at 121 To the contrary, Defendants have submitted evidence that only Plaintiff and two of her coworkers engaged in this unauthorized discounting and that Ms. Bolero, whose position was also eliminated, was "tearful and emotional . . . but ultimately indicated that she was happy to continue on as an Assistant Dispensary Manager." ECF No. 101 at 7-8.

For these reasons, the Court finds that Mr. Adcock, Ms. Ciganek, and Ms. Bolero are not "similarly situated" employees and that Plaintiff has not met her burden of establishing a prima facie case of disparate treatment discrimination.

### Legitimate, Non-Discriminatory, Reason for Termination

Even assuming arguendo that Plaintiff could make out a prima facie case of discrimination, Defendants have set forth legitimate non-discriminatory reasons for its decisions to eliminate Plaintiff's Assistant Inventory Manager position and revoke her offer of reemployment—namely a decrease in sales spurred by the COVID-19 pandemic and a concern for employee morale. ECF Nos. 100-5 at 120; 101 at 6, 24. Plaintiff has not rebutted these legitimate non-discriminatory reasons for Defendants' decisions. *See Travers v. Computing Analysis Corp.*, No. 98-1671, 1999

WL 285859, at *3 (4th Cir. May 7, 1999) (per curium) (unpublished). Accordingly, the Court grants summary judgment on this claim.

Disparate Pay Discrimination Claim

While it is not clear from Plaintiff's Amended Complaint that she is asserting a claim of racial discrimination regarding compensation, Defendants raise it in their Motion for Summary Judgment and the Court will exercise its discretion to address it. *See* ECF Nos. 48, 100-1 at 28-29. To make out a prima facie case of disparate pay discrimination under the *McDonnell Douglas* burden-shifting approach, a plaintiff must show: "(1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action with respect to compensation; and (4) that similarly situated employees outside the protected class received more favorable treatment." *While v. BFI Waste Servs.*, 375 F.3d 288, 295 (4th Cir. 2004).

Here, the Court finds that Plaintiff cannot make out a prima facie case as she has not identified any similarly situated comparators. As explained above, Mr. Adcock and Ms. Ciganek are not similarly situated as they were Plaintiff's supervisors and were in higher level managerial positions. ECF No. 100-5 at 28, 67-68. Ms. Bolero was also not similarly situated as she reported to a different supervisor and her job duties bore no resemblance to Plaintiff's. Accordingly, because she has not identified any similarly situated comparators, the Court finds that Plaintiff cannot make out a prima facie case of disparate pay discrimination.

Even assuming arguendo that Plaintiff could make out a prima facie case, the Defendants have proffered legitimate, non-discriminatory, reasons for paying Mr. Adcock, Ms. Ciganek, and Ms. Bolero more—namely that they had more experience than Plaintiff.[2] ECF Nos. 100-5 at 32-

---

[2] Setting aside the fact that Plaintiff has not established a prima facia case, Defendants have submitted evidence, which Plaintiff has not rebutted, demonstrating that Plaintiff's total compensation was equal to or greater that of some her alleged comparators. When Plaintiff

35; 100-6 at 4; 101 at 4, 6, 15. Defendants have submitted evidence that Mr. Adcock "had been employed by Blair Management since the dispensary began operating in July 2018" and that Ms. Ciganek was already working in the Inventory Department when Plaintiff started as an Auditor. ECF Nos 100-5 at 26-27; 101 at 3-4. Ms. Bolero also came to Blair Management with prior experience as she started in the cannabis industry in August 2018 and worked at two separate medical cannabis dispensaries prior to Blair Wellness. ECF Nos. 100-6 at 4; 100-7 at 4-5. Plaintiff has not proffered any evidence demonstrating that she had equal or greater experience in the cannabis dispensary field than Mr. Adcock, Ms. Ciganek, or Ms. Bolero. Accordingly, to the extent that it is alleged, the Court grants Defendants summary judgment on Plaintiff's disparate pay claim.

<u>Retaliation Claim</u>

Plaintiff has asserted that Defendants retaliated against her participation in protected activity by demoting her, firing her, and criminally charging her with theft. ECF No. 48 at ¶¶ 58-64. Defendants urge the Court to grant summary judgment on this claim as Plaintiff has failed to make out a prima facie case of retaliation. ECF No. 100-1 at 31. And, even if Plaintiff could make out a prima facie case, Defendants assert that she has not proven pretext. *Id.* at 33-34.

As with Title VII discrimination claims, "[a] plaintiff may prove a Title VII retaliation claim either through direct evidence of retaliatory animus or via the application of the *McDonnell Douglas* burden-shifting framework." *Roberts v. Glenn Indus. Grp., Inc.*, 998 F.3d 111, 122 (4th

---

assumed the Assistant Inventory Manager role, she was compensated at $20/hour which was more than her predecessor, Ms. Ciganek, made ($19/hour). ECF No. 101 at 5. While Plaintiff made $1/hour less than Ms. Bolero as the Assistant Inventory Manager, she received $257/month in medical benefits which Ms. Bolero did not. ECF No. 100-6 at 3-4. And, finally, during Blair Management's restructuring, both Plaintiff and Ms. Bolero were offered new positions at the exact same wage—$17/hour plus tips. ECF No. 101 at 7.

Cir. 2021). Under the *McDonnell Douglas* framework, a plaintiff must first establish a prima facie case of retaliation by showing: "(1) that she engaged in protected activity; (2) that her employer took an adverse action against her; and (3) that a causal connection existed between the adverse activity and the protected action." *Jacobs v. N.C. Admin. Office of the Cts.*, 780 F.3d 562, 578 (4th Cir. 2015) (brackets and internal quotation marks omitted). If a plaintiff makes this showing, "the burden shifts to the employer to show that it took adverse action for a legitimate non-retaliatory reason." *Roberts*, 998 F.3d at 122. And, finally, if the employer makes this showing, "the burden shifts back to the plaintiff to rebut the employer's evidence by demonstrating the employer's purported non-retaliation reasons were pretext for discrimination." *Id.*

*The Prima Facie Case*

Here, Defendants do not question that Plaintiff participated in a protected activity when she met with Ms. Beatty, who was responsible for performing human resources functions at Blair Management, to discuss her compensation and potential wage discrimination. ECF Nos. 100-5 at 41-42; 100-6 at 2. Defendants argue, however, that the elimination of Plaintiff's position as Assistant Inventory Manager was not adverse as she was offered "an equivalent or better position" as an Assistant Dispensary Manager. ECF No. 100-1 at 32. In the alternative, Defendants contend that Plaintiff has failed to establish a causal connection between her engagement in protected activity and her subsequent demotion and termination. *Id.* at 32-33. Specifically, Defendants allege that Mr. Blair decided to eliminate the Assistant Inventory Manager role before Plaintiff engaged in protected activity and that he was unaware of Plaintiff's engagement in protected activity at the time that he informed Plaintiff that her position was being eliminated. *Id.*

*Adverse Employment Action*

This Court has explained that "[t]he anti-retaliation provision of Title VII does not protect against 'petty slights, minor annoyances, or simple lack of good manners.'" *Geist v. Gill/Kardash P'Ship*, 671 F.Supp.2d 729, 738 (D.Md. 2009) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)). "An adverse employment action is a discriminatory act that 'adversely affects the terms, conditions, or benefits of the plaintiff's employment.'" *Chang Lim v. Azar*, 310 F.Supp.3d 588, 601 (D.Md. 2018) (quoting *Holland v. Wash. Homes, Inc.*, 487 F.3d 208, 219 (4th Cir. 2007). Generally, "discharge, demotion, decrease in pay or benefits, loss of job title or supervisory responsibility, or reduced opportunities for promotion" constitute adverse actions. *Boone v. Goldin*, 178 F.3d 253, 255 (4th Cir. 1999).

Here, the Court readily concludes that Plaintiff suffered an adverse job action when Mr. Blair decided to eliminate her Assistant Inventory Manager position. Although Plaintiff was offered another position, she lost her title and her supervisory responsibilities would have significantly changed (from managing back-of-house employees to front-of-house employees). ECF No. 100-5 at 18-19, 120. There is also, at the very least, a material dispute of fact as to whether Plaintiff would have earned as much in her new role as her hourly wage was cut from $20/hour with medical benefits to $17/hour plus tips. ECF No. 100-5 at 120-21. Accordingly, the Court finds that Plaintiff has established that she suffered an adverse job action when her position was eliminated.

*Causal Connection*

To establish a causal connection at the prima facie stage, a Plaintiff must show that "a causal relationship existed between the protected activity and the adverse employment activity." *Foster v. Univ. of Md.—Eastern Shore*, 787 F.3d 243, 253 (4th Cir. 2015). "Stated differently, a

22

plaintiff must show that [her] employer 'took the adverse action *because* of the protected activity.'" *Roberts*, 998 F.3d at 123 (quoting *Bryant v. Aiken Reg'l Med. Ctrs., Inc.*, 333 F.3d 536, 543 (4th Cir. 2003)) (emphasis in *Roberts*). Establishing such a relationship at the prima facie stage is "not an onerous burden." *Strothers v. City of Laurel,* 895 F.3d 317, 335 (4th Cir. 2018) (citing *Foster*, 787 F.3d at 251).

"A plaintiff may attempt to demonstrate that a protected activity caused an adverse action through two routes." *Johnson v. United Parcel Serv., Inc.*, 839 Fed.Appx. 781, 783-84 (4th Cir. 2021). "First, a plaintiff may establish that the adverse action bears sufficient temporal proximity to the protected activity." *Id.* (citing *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001)). Second, "[a] plaintiff may establish the existence of facts that 'suggest[] that the adverse action occurred because of the protected activity.'" *Roberts*, 998 F.3d at 123 (quoting *Johnson*, 839 F.App'x at 783-84).

Although establishing a causal connection at the prima facie stage is not a high bar, the Fourth Circuit has "consistently required proof of a decisionmaker's knowledge of protected activity to support a Title VII retaliation claim." *Roberts*, 998 F.3d at 124. Therefore, "[t]o establish a causal relationship between the protected activity and the termination, a plaintiff must show that the decisionmaker was aware of the protected activity at the time the alleged retaliation occurred." *Id.* (citing *Baqir v. Principi*, 434 F.3d 733, 748 (4th Cir. 2006)). The Fourth Circuit has reasoned that "[s]ince, by definition, an employer cannot take action because of a factor of which it is unaware, the employer's knowledge that the plaintiff engaged in a protected activity is absolutely necessary to establish the third element of the prima facie case." *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 657 (4th Cir. 1998).

Plaintiff here has not offered, nor has the Court identified, any evidence that Mr. Blair was aware that Plaintiff had engaged in protected activity before he decided to eliminate her position, revoke her offer of reemployment, or pursue criminal theft charges. The uncontroverted evidence before the Court demonstrates that Mr. Blair made the decision to eliminate Plaintiff's position prior to Plaintiff's engagement in protected activity. ECF No. 101 at 6. While Plaintiff met with Ms. Beatty to raise a potential discrimination claim on October 29, 2020, Mr. Blair made the decision to eliminate her position in [m]id-October 2020." *Id.* Mr. Blair also stated in his declaration that he was "not advised by . . . Melissa Beatty . . . that she had a conversation with Plaintiff on October 29, 2020 . . . until after the decision to eliminate the Assistant Inventory Manager decision had been made[.]" ECF No. 101 at 6. Based on this evidence, and the complete lack of evidence offered by Plaintiff, the Court finds that Plaintiff has failed to establish that Mr. Blair was aware of her protected activity before he took adverse employment actions against her. Accordingly, Plaintiff has failed to establish a prima facie case of retaliation.

*Pretext*

Even assuming arguendo that Plaintiff could make out a prima facie case of retaliation, the Court would still find that summary judgment was appropriate because Plaintiff has failed to establish that Defendants' legal, non-retaliatory reasons for her demotion, termination, and criminal prosecution were pretextual. *Shaffer v. ACS Gov. Servs., Inc.*, 454 F.Supp.2d 330, 335-36 (D.Md. 2006) ("[I]n an action for retaliatory discharge, the plaintiff cannot survive summary judgment simply by establishing the prima facie case."). To prove pretext, a plaintiff "faces a heavier burden than [she] did at the prima facie stage." *Marley v. Kaiser Permanente Found. Health Plan*, No. PWG-17-1902, 2021 WL 927459, at *8 (D.Md. March 11, 2021). A plaintiff "must establish 'both that the [employer's] reason was false and that [retaliation] was the real

24

reason for the challenged conduct.'" *Foster*, 787 F.3d at 252 (quoting *Jiminez v. Mary Washington Coll.*, 57 F.3d 369, 378 (4th Cir. 1995)). This burden cannot be met "through mere speculation." *Miskin v. Baxter Healthcare Corp.*, 107 F.Supp.2d 669, 671 (D.Md. 1999).

The Court will begin its discussion with Defendants decision to eliminate Plaintiff's Assistant Inventory Manager position. Defendants have stated that Plaintiff's position was eliminated because of the economic downturn caused by COVID-19. ECF Nos. 101-5 at 120; 101 at 6, 24. This assertion is supported by Blair Wellness's financial records, which show that the dispensary's December 2020 sales were $434,640 less than their July 2020 sales. ECF No. 101 at 24. Defendants have also articulated that—of all the positions in the Inventory Department—Plaintiff's Assistant Manager Position was eliminated as it was "the second-highest paid position in the Inventory Department" and because the functions of this role could be subsumed by lower earning Inventory Department employees.[3] ECF No. 101 at 6. Plaintiff has failed to produce any evidence to rebut these assertions. Accordingly, because Plaintiff has not shown that Defendants' stated reason is false, the Court finds that she has failed to carry her burden to prove pretext.[4]

Defendants also assert that Plaintiff's offer of reemployment was revoked due to concerns about her ability to "interact with other managers, patient consultants[,] and dispensary patients in a positive manner." ECF No. 101 at 7-8. Plaintiff argues that this explanation is merely pretext because Defendants did not revoke Ms. Bolero's offer of reemployment despite Ms. Bolero's

---

[3] Mr. Blair declared that the position of Compliance Officer, which was held by Ms. Bolero, a white employee, similarly needed to be eliminated as it "was [] one of the highest paid positions at the dispensary and the duties of this position were already shared with the Clinical Director." ECF No. 101 at 6.

[4] Although Plaintiff's untimely Response has been stricken, the Court notes that her 13-page filing devotes only approximately two (2) pages to responding to Defendants' arguments that summary judgment should be granted on her discrimination and retaliation claims. ECF No. 105 at 10-12. Particularly relevant here, Plaintiff's Response does not address Defendants' legitimate non-retaliatory reasons for Plaintiff's adverse employment actions. *Id.*

"disgruntled" reaction. ECF No. 100-5 at 62. However, Plaintiff has, again, failed to produce any evidence to this effect and specifically testified that she does not know how Ms. Bolero responded to the news that her position was being eliminated. *Id.* at 63-64. Accordingly, because Plaintiff has failed to produce any evidence that Defendants purported reason was false, the Court finds that she has not met her burden of proving pretext.

The Court will lastly address Plaintiff's referral to the Baltimore Police Department. Defendants assert that they uncovered Plaintiff's suspected diversion during an audit of employee purchases and that they were informed by an Inspector at the Maryland Medical Cannabis Commission that they were required—under the applicable Maryland Regulations—to report the suspected diversion to law enforcement. ECF Nos. 100-5 at 79, 83; 101 at 8, 26-46. While Plaintiff asserts that this explanation is merely pretext as "managers had the ability to discount product," she has not proffered any evidence that the discounted purchases underlying her criminal charges were properly authorized, nor has she identified any other employees who purchased cannabis products at such a steep discount. ECF No. 100-5 at 79, 83. In fact, Plaintiff specifically testified that she has never witnessed other employees purchase product at such a heavy discount. *Id.* 74-83. Accordingly, the Court finds that she has not rebutted Defendants' legitimate non-discriminatory reasons for her referral to law enforcement.

In sum, Plaintiff has failed to establish a prima facie case of retaliation as she has failed to prove that a causal connection existed between her engaging in protected activity and her demotion, termination, and referral to law enforcement. And, even assuming arguendo that Plaintiff could make out a prima facie case, the uncontested evidence before the Court establishes that Defendants (the decisionmakers) believed that Plaintiff's position should be eliminated due to economic downturns, that her offer of reemployment should be revoked for employee morale, and

that her suspected theft needed to be reported to law enforcement. *See Holland*, 487 F.3d at 217

("It is the perception of the decisionmaker which is relevant.") (cleaned up). Plaintiff has failed to

produce *any* evidence demonstrating that these explanations are pretextual. For these reasons, the

Court grants summary judgment in Defendants' favor on Count II.

Plaintiff's Defamation Claim

In Count IV of her Amended Complaint, Plaintiff alleges that Defendants defamed her in

two private messages and a social media post: (1) Blair Wellness's statement to their patients; (2)

Mr. Blair's private message to Jazz Baker; and (3) Mr. Blair's private email to Noelle Freitas.[5]

ECF No. 101 at 50-52. Blair Wellness's statement, which was posted to its social media accounts,

explained that "several long-term employees were engaged in misappropriating medical cannabis

inventory" and that it was "highly probable that one or more of [the terminated employees] who

now face legal consequences may use social media . . . to create a different narrative[.]" *Id.* at 51.

Mr. Blair's private messages also provided the case numbers of the criminal cases against Plaintiff

and the other two employees and explained that "[t]he full details of the State's action can be

obtained by assessing the Maryland Judicial Case Search." *Id.* at 52. Defendants move for

summary judgment alleging that Plaintiff has failed to establish the elements of defamation. ECF

No. 100-1 at 34.

Because it is a common law action, Plaintiff's defamation claim is governed by Maryland

law. *Booth v. Maryland*, 327 F.3d 377, 384 (4th Cir. 2003) (applying Maryland law to defamation

claim). "Under Maryland law, to establish a prima facia case of defamation, a plaintiff must

establish that (1) the defendant made a defamatory statement to a third person (a requirement

---

[5] The Court need not address Count III of Plaintiff's Amended Complaint for malicious prosecution as Plaintiff has voluntarily withdrawn this Count. ECF Nos. 48 at ¶¶ 65-68; 100-2 at 2.

known as publication); (2) the statement was false; (3) the defendant was legally at fault in making the statement; and (4) the plaintiff thereby suffered harm." *Doe v. Johns Hopkins Health Sys. Corp.*, 274 F.Supp.3d 355, 365 (D.Md. 2017). "[A] 'defamatory statement' is one that tends to expose a person to 'public scorn, hatred, contempt, or ridicule,' which, as a consequence, discourages 'others in the community from having a good opinion of, or associating with, that person.'" *Piscatelli v. Van Smith*, 424 Md. 294, 306 (2012) (quoting *Indep. Newspapers, Inc. v. Brodie*, 407 Md. 415, 441 (2009)). Defendants in the instant case contend that Plaintiff has failed to establish the second and third elements of a defamation claim as she has not proven that their social media statements were false or that they were legally at fault for making the contested statements. ECF No. 100-1 at 35-37.

*Falsity of Defendants' Statements*

Defendants first argue that Plaintiff cannot prove that the published statements were false as Plaintiff was undisputedly terminated and charged with theft. *Id.* at 35-36. "A false statement is one that is not substantially correct." *Batson v. Shiflett*, 325 Md. 684, 726 (1992). "Minor inaccuracies do not amount to falsity so long as 'the substance, the gist, the sting, of the libelous charge be justified.'" *Id.* (quoting *Masson v. New Yorker Mag., Inc.*, 501 U.S. 496, 517 (1991)). "The burden of proving falsity is on the plaintiff[.]" *Id.*

Here, the evidence before the Court unquestionably demonstrates that Plaintiff was terminated from Blair Management and that she was charged in the District Court of Maryland for Baltimore City with theft and theft scheme. ECF Nos. 100-5 at 119, 123-24. Accordingly, to the extent that Plaintiff alleges that she was defamed by the publication of her termination and the case number of her criminal case, the Court finds that she has not carried her burden to prove their falsity.

Plaintiff has also failed to disprove Defendants statement that she "misappropriate[d] medical cannabis inventory."[6] ECF No. 101 at 51. Defendants have, ever since they audited their employee's transactions in late October 2020, asserted (both publicly and privately) that Plaintiff and two coworkers applied unauthorized discounts to large quantities of cannabis products. *Id.* at 9. While Plaintiff testified that "managers had the ability to discount product and that they did that frequently," she has not produced *any* evidence that her discounted purchases were properly authorized or that other employees at Blair Management purchased cannabis products at such steep discounts. ECF No. 100-5 at 83. Defendants, on the other hand, have produced evidence that the applicable employee discount was 30% and that discounts of 90-95% were not authorized on quantities as large as Plaintiff purchased. ECF No. 101 at 9-10, 47. Without evidence disproving these assertions, the Court must find that Plaintiff has failed to show that Defendants' statement that she "engaged in misappropriating medical cannabis inventory" is false. ECF No. 101 at 52. *See Trundle v. Homeside Lending, Inc.*, 162 F.Supp.2d 396, 400 (D.Md. 2001) (granting summary judgment on a defamation claim because the plaintiff "has not demonstrated that the communication was false").

### *Legal Fault*

Even assuming arguendo that Plaintiff could prove the falsity of Defendants' statements, the Court finds that she has failed to generate any evidence of the Defendants' legal fault. ECF No. 100-1 at 36. To establish the legal fault element of a defamation claim, a plaintiff must show that the party making the allegedly false defamatory statement acted with "either negligence or

---

[6] Even if Plaintiff's Response had been considered, the Court notes that the filing offers practically no arguments in support of her defamation claim. Any substantive reference to defamation is limited to her argument that "[a]ccusations of theft are defamatory per se." ECF No. 105 at 12. This argument is, however, not relevant as defamation per se only applies to the first element of a defamation claim, which Defendants do not challenge at this stage.

actual malice." *Samuels v. Tschechtelin*, 135 Md. App. 483, 544 (2000); *Doe*, 274 F.Supp.3d at

366. Maryland courts have defined negligence as:

> [A]ny conduct, except conduct recklessly disregardful of an interest of others,
> which falls below the standard established by law for protection of others against
> unreasonable risk of harm. It does not exist apart from the facts and circumstances
> upon which it is predicated, necessarily involves the breach of some duty owed by
> a defendant to the plaintiff, and is inconsistent with the exercise of ordinary care.

*Mayor & City Counsel of Balt. v. Hart*, 395 Md. 394, 410-11 (2006) (internal citations and

quotations omitted). "Actual malice, a higher degree of fault, requires a showing that the defendant

made the defamatory statement 'with knowledge that it was false or with reckless disregard of

whether it was false or not.'" *Mejia v. Telemundo Mid-Atlantic LLC*, 440 F.Supp.3d 495, 501

(D.Md. 2020) (quoting *Batson v. Shiflett*, 325 Md. 684, 728 (1992)).

In the instant case, I find that Mr. Blair exercised due diligence prior to stating that Plaintiff

had "engaged in misappropriating medical cannabis inventory" and committed "theft or

diversion." ECF No. 101 at 51. The evidence before the Court demonstrates that Mr. Blair

exercised ordinary care in investigating and managing Plaintiff's suspected diversion as he: (1)

conducted an audit of all employee purchases for September and October 2020; (2) reviewed

surveillance camera footage of suspicious transactions; and (3) consulted with an inspector at the

Maryland Medical Cannabis Commission who informed him that he was required to report

"suspected diversion" to law enforcement. ECF No. 101 at 9-10.

The timeline of events in this case also clearly shows that Mr. Blair only released

statements related to Plaintiff's actions *in response* to serious accusations publicly lodged against

him. ECF Nos. 100-8 at 10-11; 101 at 10-11, 49-52. The evidence before the Court demonstrates

Mr. Blair only publicized Plaintiff's termination after Jazz Baker posted her "discrimination alert"

online. Mr. Blair originally attempted to resolve this matter privately, as he individually messaged

Ms. Baker to rebut and respond to the allegations in her post. ECF Nos. 100-8 at 10-11; 101 at 10-11. However, after Ms. Baker informed him that she had no "intention to engage in dialogue" with him, Mr. Blair hired a communications firm to disseminate a public statement (which did not include any of Plaintiff's identifying information) rebutting the allegations in the publicly posted "discrimination alert." ECF No. 101 at 11, 51. Similarly, Mr. Blair only released Plaintiff's criminal case number to Noelle Freitas in response to her allegation that he had illegally terminated Plaintiff. *Id.* at 52. Therefore, considering the serious nature of the public accusations, the Court finds that Mr. Blair acted as a reasonably prudent person would in responding to and rebutting the allegations against himself and his business.

Finally, the substance of Mr. Blair's communications demonstrates that he acted with due diligence and ordinary care. While the statement published on Blair Wellness's social media pages explains that "several long-term employees were engaged in misappropriating medical cannabis inventory," it does not specifically name Plaintiff or her fired coworkers, nor does it include any information, such as their criminal case numbers, which would allow an interested party to identify them. ECF No. 101 at 51. In fact, the only identifying information ever disseminated by Defendants was Plaintiff's criminal case number (publicly available on the Maryland Judiciary Case Search), which Mr. Blair provided in private responsive communications to Jazz Baker and Noelle Freitas. *Id.* at 49-50, 52. Accordingly, given the narrow scope of the disclosure of Plaintiff's personal information, the Court finds that Defendants were not negligent.

In sum, the Court finds that Defendants were not negligent as they believed that Plaintiff committed theft and exercised ordinary care in responding to the online posts related to Plaintiff's termination and criminal prosecution. Summary judgment on Count IV is, therefore, granted in

favor of Defendants. Because Defendants' actions do not rise to the level of negligence, the Court

need not decide whether these actions meet the more demanding actual malice standard.

**Defendants' Motion to Seal**

 The Court now turns to Defendants' Motion to Seal exhibit B to their Motion for Summary

Judgment. ECF Nos. 101, 102. This exhibit contains a declaration by Mr. Blair as well as numerous

supporting exhibits. ECF No. 101. Defendants argue that Plaintiff's medical cannabis purchase

receipts should be sealed as they qualify as "protected health information" and that the other

documents should be sealed "to protect the confidentiality . . . and private information concerning

non-parties." *Id.* at 2. In Defendants' view, many of these documents must be sealed as they have

been labeled "confidential" pursuant to this Court's Discovery Confidentiality Order, ECF No. 71.

*Id.* For the reasons explained below, I grant the Motion to Seal as to Plaintiff's medical cannabis

purchase receipts but deny it as to all other documents.

<u>In General</u>

 The publicity of judicial records is "necessary in the long run so that the public can judge

the product of the courts in a given case." *Columbus-Am. Discovery Grp. v. Atlantic Mut. Ins. Co.*,

203 F.3d 291, 303 (4th Cir. 2000). "The right of public access to documents or materials filed in a

district court derives from two independent sources: the common law and the First Amendment."

*Va. Dep't of State Police v. Wash. Post*, 386 F.3d 567, 575 (4th Cir. 2004). The distinction between

these sources is "significant" because "the common law does not provide as much access to the

press and public as the First Amendment does." *Id.* (internal citations omitted). When the First

Amendment right of access is implicated, a district court may restrict access "only on the basis of

a compelling governmental interest, and only if the denial is narrowly tailored to serve that

interest." *Stone v. Univ. of Md. Med. Sys. Corp.*, 855 F.2d 178, 180 (4th Cir. 1988). The United

States Court of Appeals for the Fourth Circuit has held that "the more rigorous First Amendment standard should . . . apply to documents filed in connection with a summary judgment motion in a civil case." *Rushford v. New Yorker Magazine*, 846 F.2d 249, 253 (4th Cir. 1988).

Procedurally, Local Rule 105.11 requires that a party seeking to seal documents offer reasons supported by "specific factual representations" justifying the sealing and an explanation for "why alternatives to sealing would not provide sufficient protection." Local Rule 105.11 (D.Md. 2021). If a court ultimately decides that sealing is warranted, "it should also provide reasons, supported by specific factual findings, for its decision to seal and for rejecting alternatives." *Butler v. DirectSAT USA, LLC*, 876 F.Supp.2d 560, 576 (D.Md. 2012) (citing *In re Knight Publ'g Co.*, 743 F.2d 231, 235 (4th Cir. 1984)).

Plaintiff's Medical Records

Despite the high First Amendment standard for sealing exhibits attached to motions for summary judgment, this Court has repeatedly found that "sensitive medical or personal identification information may be sealed" so long as the scope of the request is not too broad. *Rock v. McHugh*, 819 F.Supp.2d 456, 475 (D.Md. 2011). *See also Redd v. Watts*, SAG-21-0455, 2022 WL 3028001, at *1 (D.Md. Aug. 1, 2022) (Defendants' "request to seal two exhibits which are [the plaintiff's] medical records presents a compelling reason and will be granted"); *Briggs v. Marriott Int'l, Inc.*, 368 F.Supp.2d 461, 463 n.1 (D.Md. 2005) (granting an uncontested motion to seal the plaintiff's "long-term disability benefits claim" file because it "includes personal and medical information").

Here, Defendants first argue that that Plaintiff's medical cannabis purchase records, included as attachment 7 to exhibit B, should be sealed as they are medical records covered by the Health Insurance Portability and Accountability Act of 1996 ("HIPPA"). ECF No. 102 at 4. While

33

I need not determine whether HIPPA applies, I find that the purchase receipts are akin to the medical records that this Court has previously ordered sealed. ECF No. 101 at 26-46. Similar to prescriptions or receipts for other prescription drugs, these records are sensitive as they divulge the types and quantities of medical cannabis that Plaintiff was purchasing and consuming. *Id.* Accordingly, the Court finds that Plaintiff has presented a compelling reason to seal these medical records. The Court also finds that alternatives to sealing are not feasible as the entirety of the documents contain information related to Plaintiff's medical cannabis usage. Therefore, because Defendants have met their burden under the First Amendment standard, the Court grants the Motion to Seal Plaintiff's medical cannabis purchase records.

Non-Party Information

Defendants also seek to seal Mr. Blair's declaration and the other supporting exhibits including: the Administrative Service Agreement; a description of the Inventory Manager's compensation structure; documents related to an inspection by the Maryland Medical Cannabis Commission; internal Blair Management policies; and several social media messages. ECF No. 101 at 1-25, 47-52. They argue that these documents are designated as "confidential" under the Court's Discovery Confidentiality Order, ECF No. 71, and that they must be sealed to "protect the confidentiality . . . and private information concerning non-parties." ECF No. 102 at 3.

In *Rushford v. New Yorker Magazine, Inc.*, the Fourth Circuit explained that pre-trial discovery orders do not control the public's right to access exhibits attached to dispositive motions. 846 F.2d at 252-53. The Court reasoned that discovery, "which is ordinarily conducted in private, stands on a wholly different footing than does a motion filed by a party seeking action by the court." *Id.* at 252. As such, district courts must address whether a document is eligible to be sealed "at the time it grants a summary judgment motion and not merely allow continued effect to a

pretrial discovery protective order." *Id.* at 253. Absent "some overriding interest in favor of keeping the . . . documents under seal," even discovery material designated as "confidential" should be unsealed at the motion for summary judgment stage. *Id.* at 252-53.

Here, as in *Rushford*, the Court finds that the previously entered Discovery Confidentiality Order, ECF No. 71, does not control the Court's analysis. Rather, the Court must determine whether Defendants have articulated a compelling governmental interest to seal these documents that is narrowly tailored. *See Rushford*, 846 F.2d at 253. I find that they have not.

Defendants' assertion that Mr. Blair's declaration and the remaining attachments must be sealed to "protect the confidentiality . . . and private information concerning non-parties" clearly does not withstand First Amendment scrutiny. This blanket statement is devoid of "specific factual representations" and does not show that the documents are "proprietary business information" or "sensitive personnel records" which can properly be sealed. *See* Loc. R. 105.11; *Butler*, 876 F.Supp.2d at 576-77. This is underscored by the fact that several of these documents, including the Administrative Services Agreement and Blair Wellness's social media post, have previously been filed on the publicly accessible docket. *See* ECF Nos. 51, 48.

Assuming arguendo that the sealing of these documents would satisfy an important government interest, the Court finds that less restrictive alternatives to sealing the documents are available. ECF No. 101. In particular, the Court finds that Defendants can adequately protect the information of non-parties by redacting the names and email addresses of Blair Management employees and by redacting the names of Plaintiff's coworkers who were also charged with the theft of cannabis products from Blair Wellness. *Id.*

Accordingly, the Court grants in part and denies in part Defendants' Motion to Seal exhibit B. ECF No. 102. Defendants previously filed exhibit, ECF No. 101, will remain under seal.

However, within 14 days of the issuance of this Opinion, Defendants are directed to file on the public docket a redacted copy of Mr. Blair's Declaration and exhibits 1, 2, 3, 4, 5, 6, 8, 9, 10, 11, and 12.

## CONCLUSION

For the reasons set forth in this Memorandum Opinion, Defendants' Motion for Summary Judgment (ECF No. 100) and Motion to Strike (ECF No. 107) are GRANTED and Defendants Motion to Seal (ECF No. 102) is GRANTED in part, DENIED in part. A separate Order will follow.

Date: 30 June 2023

A. David Copperthite
United States Magistrate Judge